707 So.2d 12 (1998)
SOLOCO, INC.
v.
Julius W. "Jay" DUPREE, and Sheldon J. LeBlanc.
Percy J. LeBLANC
v.
Julius W. "Jay" DUPREE, and Sheldon J. LeBlanc.
No. 97-CA-1256.
Supreme Court of Louisiana.
January 21, 1998.
*13 L. Albert Forrest, Forrest & Lopresto, New Iberia, Arthur A. Morrell, New Orleans, for Applicant.
Michael A. Tomino, Jr., Raymond M. Allen, Lafayette, Randall P. Serrett, St. Martinville, Michael A. Harris, Angie R. LaPlace, Baton Rouge, Richard P. Ieyoub, Atty. Gen., for Respondent.
KNOLL, Justice.[*]
This case arises out of an accident between an automobile and a thoroughbred race horse. At issue is the constitutionality of La.R.S. 4:173.1, which limits the liability of owners of thoroughbred horses when those horses are in the care, custody, or control of *14 a third person. After La.R.S. 4:173.1 was declared unconstitutional in the district court, defendant appealed directly to this court under LA. CONST. art. V. § 5(D). For the following reasons, we find La.R.S. 4:173.1 constitutional, and we remand this case to the district court for further proceedings.

FACTS
In the early morning hours of February 3, 1994, "June's Bid," a thoroughbred race horse, escaped from the farm of Shelton J. LeBlanc near Breaux Bridge, Louisiana. June's Bid was owned by Julius W. Dupree, who had stabled the horse at the LeBlanc farm while he attended business in Texas. Prior to his departure, Mr. Dupree had arranged for Cornelius Johnson, a licensed groom who lived near the LeBlanc farm, to feed and exercise June's Bid in his absence. On February 3, 1994, Johnson was exercising the horse in a swimming tank on the LeBlanc farm when the horse broke its lead and bolted towards Highway 94, which was adjacent to the farm. Before June's Bid could be recovered, it was involved in an accident with a pickup truck owned by Soloco, Inc., and driven by P.J. LeBlanc, a Soloco employee. June's Bid was killed in the collision, and significant damage was caused to the Soloco vehicle. P.J. LeBlanc was also injured in the accident. Soloco and P.J. LeBlanc filed suit for damages they sustained as a result of the accident, and their cases were consolidated for trial purposes. Julius Dupree, Shelton LeBlanc, and Cornelius Johnson were named defendants in both suits.
Prior to trial, Julius Dupree and Shelton LeBlanc each filed peremptory exceptions of no cause of action and no right of action, citing La.R.S. 4:173.1, which provides:
A. No person, partnership, corporation, or other entity engaged in the breeding, training, or racing of thoroughbred or quarter horses in Louisiana shall be held liable for damages to a third party caused by a horse they own while such horse is in the care, custody, or control of a person other than the owner, unless such damages were caused by the gross negligence of the owner of the horse.
B. The sole right of action for an employee of a person, other than the owner of the horse, who had care, custody, or control of such horse at the time damages were incurred shall be pursuant to the Louisiana Worker's Compensation Law.
C. The right of action for all other third parties is restricted to the person, other than the owner of the horse, who had care, custody, or control of the horse at the time damages were incurred.
In response to defendants' exceptions, Soloco filed a "Motion for Summary and/or Declaratory Judgment," asserting that La. R.S. 4:173.1 was unconstitutional. After a hearing on plaintiff's motion, the district court held La.R.S. 4:173.1 unconstitutionally violated Soloco's rights of equal protection and substantive due process, stating:
So it seems to me that what this statute is doing is protecting people that are in the business of racing horses who can more afford the burden than the individual who privately owns a horse and is not using it for breeding and is not in the racehorsing business. It's putting the burden on them. Whereas the people that are in the business, they could more afford the burden to assume the risk....
And to allow the owner a protection by this statute just isn't fair. Soloco has every right to be in business and conduct its business without any injury to operation, as the people in the horse business do. So it's setting aside a certain business and giving them a special exemption. And the court finds that it is unconstitutional. I will grant the declaratory judgment as prayed for.

LAW
Statutes are presumed to be constitutional, and the burden of proving that an act of the legislature is unconstitutional is upon the party attacking the act. Moore v. Roemer, 567 So.2d 75, 78 (La.1990). The power of the legislature is plenary, and a party challenging a statute's constitutionality must articulate a particular constitutional provision that limits the legislature's powers. Chamberlain v. State, Through DOTD, 624 So.2d 874 (La.1993). In the instant case, plaintiffs *15 have invoked the equal protection provision of the Louisiana constitution and principles of substantive due process. We will address each of these arguments in turn.

EQUAL PROTECTION OF LAWS
LA. CONST. art. I, § 3 provides:
No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.
As noted by this Court in Manuel v. State, 95-CA-2189 (La.7/2/96), 692 So.2d 320, LA. CONST. art. I, § 3 provides for three levels of constitutional review or scrutiny. Laws which classify individuals based on race or religious beliefs are repudiated completely. An intermediate level of scrutiny is reserved for laws which classify persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliation. The lowest level of scrutiny applies to laws which classify persons on any basis other than those enumerated in LA. CONST. art. I, § 3. Such laws need only be rationally related to a legitimate governmental purpose, and a person attacking the constitutionality of such a classification has the stringent burden of demonstrating that the law does not suitably further any appropriate state interest. See, Manuel, supra at 339; Moore v. RLCC Technologies, Inc. 95-2621 (La.2/28/96), 668 So.2d 1135; Sibley v. Board of Supervisors of Louisiana State University, 477 So.2d 1094 (La. 1985).
The basis for plaintiff's equal protection challenge is its assertion that the statute unfairly discriminates against people injured by thoroughbreds as opposed to people injured by other types of animals. Plainly, this is not a classification based on one of the characteristics enumerated in LA. CONST. art. I, § 3. As a result, the lowest level of scrutiny applies, and to prevail plaintiff must show that La.R.S. 4:173.1 does not further an appropriate state interest.
The clearly stated policy of the legislature is the promotion and encouragement of licensed horse racing in Louisiana. La.R.S. 4:141 states:
A. It is the policy of the state of Louisiana in furtherance of its responsibility to provide revenues for the operation of state government for its people, to acknowledge and declare that the providing of funds and financial assistance to licensed horse racing tracks in the state of Louisiana constitutes an authorized public function and purpose of the state of Louisiana ...
(1) To institute and maintain a program to encourage and permit development of the business of horse racing with parimutuel wagering thereon on a high plane.
(2) To institute and maintain a program to encourage and permit development of the breeding and ownership of race horses in the state.
* * * * * *
B. This Chapter is an exercise of the police powers of the state to promote the public health, safety and welfare.
The horse racing industry is an important source of state revenue in addition to being a substantial employer of Louisiana residents. The owners of the thoroughbred horses used in racing are the lifeblood of the industry, in that they are the major source of the industry's capital.
La.R.S. 4:173.1 encourages the ownership of thoroughbred race horses by limiting an owner's liability only when the thoroughbred is placed in the custody of another. The liability of the owner of the horse is not altogether eliminated. Rather, the owner's liability is lowered from strict liability to gross negligence, and only when the owner places the thoroughbred in the custody of another. By removing a considerable risk of tort liability from the absentee owner and placing it on the party who actually has custody of the thoroughbred, La.R.S. 4:173.1 encourages the flow of capital into the racing industry in the same way that a corporate business entity promotes shareholder investment *16 by limiting liability. It also encourages owners to place their horses with third party trainers, and thereby fosters the profession of horse training. We find that La.R.S. 4:173.1 is rationally related to the legislature's stated public purpose of promoting thoroughbred racing in Louisiana.[1]

DUE PROCESS
Prior to the enactment of La.R.S. 4:173.1 in 1990, the owner of a domesticated animal was strictly liable for damages caused by that animal. Liability attached whether or not the owner had custody of the animal at the time the damages occurred. Rozell v. Louisiana Animal Breeders Co-op., 496 So.2d 275 (La.1986).[2] Plaintiffs assert that by enacting La.R.S. 4:173.1, the legislature has deprived them of a valuable property right, namely the right to recover from owners of thoroughbred race horses. Plaintiffs argue that because this fundamental liberty or property right has been abridged by the legislature, La.R.S. 4:173.1 should be subject to heightened scrutiny.
Initially, we note that the accident in the case sub judice occurred in 1994, long after La.R.S. 4:173.1 became effective in 1990. Plaintiffs have not been deprived of a vested cause of action against the owner of June's Bid. Their cause of action against the owner never arose under Louisiana law. As a result, plaintiff's complaint that La.R.S. 4:173.1 has deprived them of a vested property right is without merit. The Louisiana Supreme Court in Burmaster v. Gravity Drainage District No. 2 of the Parish of St. Charles, 366 So.2d 1381 (1978) stated that:
Where an injury has occurred for which the injured party has a cause of action, such cause of action is a vested property right which is protected by the guarantee of due process. See Gibbes v. Zimmerman, 290 U.S. 326, 332, 54 S.Ct. 140, [142], 78 L.Ed. 342 (1933); Pritchard v. Norton, 106 U.S. 124, 132, 1 S.Ct. 102, [107], 27 L.Ed. 104 (1882). However, where the injury has not yet occurred and the cause of action has not yet vested, the guarantee of due process does not forbid the creation of new causes of action or the abolition of old ones to attain permissible legislative objectives. See Silver v. Silver, 280 U.S. 117, 122, 50 S.Ct. 57, [58], 74 L.Ed. 221 (1929). Our jurisprudence has recognized the validity of legislative regulation of causes of action, including replacement and even abolition, that one person may have against another for personal injuries. See Ancor v. Belden Concrete Products, Inc., 260 La. 372, 256 So.2d 122 (1971); Colorado v. Johnson Iron Works, 146 La. 68, 83 So. 381 (1919); see also Heirs of Fruge v. Blood Services, 506 F.2d 841 (5th Cir. 1975).
Burmaster, supra at 1387.
The district court held that the policy advanced by La.R.S. 4:173.1 was improper in that the responsibility for damages caused by thoroughbred horses was removed from the party who enjoyed the benefit of owning the animal and who had the most ability to pay for the damages. Although the policy advanced by the district court for its finding of unconstitutionality is reasonable, it is inconsistent with the policy determination already made by the legislature.
The district court erred in allowing its own policy determination to override the policy determination made by the legislature. It is not the prerogative of the judiciary to disregard public policy decisions underlying legislation or to reweigh balances of interests and policy considerations already struck by the legislature. Daigle v. Clemco Industries, 613 So.2d 619 (La.1993). It is not our role to consider the wisdom of the legislature in adopting the statute. It is our province to determine only the applicability, legality, and constitutionality of the statute. Chamberlain *17 v. State, Through DOTD, 624 So.2d 874 (La. 1993), citing City of New Orleans v. Scramuzza, 507 So.2d 215, 219 (La.1987).

CONCLUSION
La.R.S. 4:173.1 is rationally related to the state's interest in developing commerce and generating state revenue through the promotion of thoroughbred racing in Louisiana. La.R.S. 4:173.1 does not violate constitutional principles of equal protection and substantive due process. Accordingly, the district court's judgment holding La.R.S. 4:173.1 unconstitutional is reversed. This case is remanded to the Fifteenth Judicial District Court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
NOTES
[*] Lemmon, J., not on panel. Rule IV, Part 2, Sec.3.
[1] La.R.S. 4:173.1 is similar in effect to numerous limitation of liability statutes enacted by the legislature in recent years. The legislature has limited the liability of owners of recreational property, directors of non-profit corporations, providers of gratuitous emergency services, sponsors of equine activities, Mardi Gras organizations, volunteer athletic coaches, food banks, and poison control centers, to name but a few. See La.R.S. 9:2791 et seq.
[2] La.Civ.Code art. 2321 was amended by Act 1 of 1996. Owners (with the exception of dog owners) are no longer subject to strict liability for damages caused by animals they own.