I2PARRO, Judge.
This class action suit was filed by a group of present and former commissioned officers of the Louisiana Department of Wildlife and Fisheries (DWF), claiming their rights to equal protection under the United States and Louisiana constitutions were violated when they were denied supplemental pay and later, were denied grade level and salary increases by the defendants, simply because they were not members of the enforcement division of DWF. They also claimed that this treatment was discriminatory and denied them their rights to a uniform pay plan under the Louisiana constitution. The equal protection and uniform pay issues came before the trial court on cross motions for summary judgment.[1] The trial judge ruled in favor of the plaintiffs, and awarded each plaintiff back pay from April 11, 1987, to the present, in the amount of $260 per month, plus legal interest from the date of judicial demand until paid, plus costs. For the reasons assigned, we amend the judgment and affirm as amended.
BACKGROUND
In 1974, a new constitution was adopted by the citizens of Louisiana. Article X, Section 10(A)(1)(a) gave the State Civil Service Commission the authority to adopt a uniform pay and classification system for state classified employees. However, Article X also gave the legislature the authority to supplement the uniform pay plan of “sworn, commissioned law enforcement officers of the Division of State Police, Department of Public Safety, and regularly commissioned officers of the Enforcement Division of the Department of Wildlife and Fisheries.” LSA-Const. art. X, § 10(A)(1)(b). To implement *31 this provision, the legislature enacted LSA-R.S. 56:696, which mandated supplemental pay for every regularly commissioned officer employed by the enforcement division of DWF. Based on this statute and Section 10(A)(1)(b), DWF supplemented the pay of its commissioned officers whose only duties were law enforcement — those in the Enforcement Division — but did not supplement the pay of its commissioned officers in other divisions who performed law enforcement duties in addition to other duties.
For political reasons that are unclear from the record, the legislature decided in 1989 to repeal LSA-R.S. 56:696, but the repeal was to be effective only “if and when the base salary of each person entitled to a supplement ... is increased by an amount equal to the supplement to which the person is entitled on the date that this Act | ^becomes law.” 1989 La. Acts No. 337, § 3. On the same day that this repealing legislation was signed by the governor, Herbert L. Sumrall, then Director of the Department of State Civil Service, raised the grade levels of those officers so their new base pay would be the equivalent of their previous total supplemented pay. The new grade levels went into effect immediately, but were not formally approved by the Civil Service Commission until October 1990.
In the meantime, in its last act of the 1989 Regular Session, the legislature also proposed an amendment to Article X, Section 10(A)(1) of the constitution, to remove the provision permitting the legislature to supplement the pay of state troopers and DWF enforcement division officers. 1989 La.Acts No. 848, § 3. This constitutional amendment was adopted by the voters in October 1990.
The plaintiffs filed this lawsuit on April 11, 1990, claiming that a violation of their rights to equal protection under the United States Constitution occurred with the enactment of the Louisiana constitutional provision allowing supplemental pay for some, but not all, commissioned officers of DWF who performed law enforcement duties. They further alleged that their rights to equal protection and a uniform pay plan under the Louisiana constitution were violated when the legislature enacted LSA-R.S. 56:696, and later, when the Civil Service Commission upgraded the pay levels of some, but not all, commissioned officers of DWF who performed law enforcement duties. The suit named the following as defendants: the State of Louisiana, through its then attorney general; DWF and its Secretary; the Louisiana Wildlife and Fisheries Commission; the State Civil Service Commission; and Herbert L. Sumrall, in his capacity as Director of the Department of State Civil Service.[2]
After considerable discovery, the equal protection and uniform pay issues came before the court on cross motions for summary judgment.[3] The evidence submitted included numerous affidavits, excerpts from depositions of lay and expert witnesses, reports of expert witnesses, answers to requests for admissions, excerpts from proceedings of the 1973 constitutional convention, job descriptions for DWF employees, |4and excerpts from internal records and correspondence of the various defendants. After considering this evidence, the trial judge stated the following concerning his conclusions:
[Ejqual protection guarantees that all persons who are similarly situated are required to be treated alike.
When I look at the two different classes that I am talking about, I will refer to one as the refuge worker with enforcement duties versus the enforcement officer[;] the latter is entirely in enforcement and the refuge officer being one that not only has *32 enforcement but has other designated duties.
When this court looked at the refuge versus enforcement officer, I can certainly see that these people are different insofar as their work[,] which would result, perhaps, in a different salary. They are not similarly situated ... [B]ut ... the issue that started off in this case is the supplemental pay. It has nothing to do with job designation insofar as the salaries are concerned.
Both sides, refuge and enforcement officers, enforce the law. So, this supplemental $260.00 [per] month was for people in the enforcement because of the exposure to hazardous conditions, meaning I do not think there is any question that the refuge worker who has enforcement duties is in a hazardous position just like the enforcement officer who has enforcement duties. I have read about the fact that the enforcement officer has a wider area, writes more tickets than the refuge worker who has enforcement duties. I do not think that makes any difference.
Supplemental pay for hazardous conditions is exactly that.
[[Image here]]
The fact is, if you have enforcement duties, you have enforcement duties, and I think the blinders have to be put on then to look at these two classes to see why one would get the supplement and the other would not.
I do not think that there should have been a difference. I think that insofar as the supplement, the $260.00 [per] month, that both should have been entitled to it because they are both in enforcement.
Then we see that the pay is increased. Why? To jump up a couple of steps to equate the $260.00. That’s the only reason, as I appreciate it, that pay increase was done. It was not done on different job descriptions^] but to merely up it ... so that the $260.00 would no longer be a supplement.... I really believe that the refuge worker and the enforcement worker are people who are similarly situated, i.e., in enforcement; and if there is pay to one for extra money for enforcement then it should be given to the other.
The court believes that the refuge workers are entitled to the $260.00 [per] month as a supplement.... So I guess what in essence I’m [d]oing is granting the summary judgment for the plaintiff[s] and denying it for the defendant^].
The judgment stated that the defendants’ failure to pay the plaintiffs the same supplemental pay as was paid to the officers in the enforcement division, and the revision of the uniform pay plan to increase the grade levels and salaries of the enforcement division officers and not the plaintiffs, denied the plaintiffs the equal ^protection of the law and their rights to a uniform pay plan. It awarded all present and former employees of DWF who are or were commissioned officers of the fur and refuge division and wildlife (game) division, and who are or were actively engaged in law enforcement in accordance with their job descriptions, and who are or were assigned to one or several wildlife management areas or refuges during the period of time from April 11, 1987,[4] to the present, the sum of $260 per month, with legal interest from date of judicial demand until paid. The defendants’ motion for summary judgment was denied and they were cast for all costs. This appeal followed.
APPLICABLE LAW

Summary Judgment

The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions. The procedure is favored and shall be construed to accomplish these ends. LSA-C.C.P. art. *33 966(A)(2). The initial burden of proof is on the mover to show that no genuine issue of material fact exists. LSA-C.C.P. art. 966(C)(2). However, once the mover has made a prima facie showing that the motion should be granted, if the non-movant bears the burden of proof at trial on the issue before the court, the burden shifts to him to present evidence demonstrating that material factual issues remain. LSA-C.C.P. art. 966(C)(2); Hayes v. Autin, 96-287 (La.App. 3rd Cir.12/26/96), 685 So.2d 691, 694, writ denied, 97-0281 (La.3/14/97), 690 So.2d 41; J. Ray McDermott, Inc. v. Morrison, 96-2337 (La.App. 1st Cir.11/7/97), 705 So.2d 195, 202, writ denied, 97-3055, 97-3062 (La.2/13/98), 709 So.2d 753, 754.
A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). A fact is “material” when its existence or nonexistence may be essential to the plaintiffs cause of action under the applicable theory of recovery. Penalber v. Blount, 550 So.2d 577, 583 (La.1989). Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the 16substantive law applicable to the case. Penton v. Clarkson, 93-0657 (La.App. 1st Cir. 3/11/94), 633 So.2d 918, 922.
Appellate courts review summary judgments de novo under the same criteria that govern the trial court’s consideration of whether a summary judgment is appropriate. Guillory v. Interstate Gas Station, 94-1767 (La. 3/30/95), 653 So.2d 1152, 1155; State v. Exxon Corp., 95-2501 (La.App. 1st Cir. 6/28/96), 676 So.2d 783, 785.

Uniform Pay Plan

Article X, Section 1(A) of the Louisiana Constitution states, in pertinent part, as follows:
The state civil service is established and includes all persons holding offices and positions of trust or employment in the employ of the state, or any instrumentality thereof.... It shall not include members of the state police service_[5]
The State Civil Service Commission was established pursuant to Article X, Section 3, and was given broad powers to accomplish the objectives of the merit system of civil service. The Commission has a constitutional trust to establish and implement a uniform classification and pay plan. LSA-Const. art. X, § 10; Gaspard v. Dep’t of State Civil Serv., 93-0311, 93-0312, 93-0313 (La.App. 1st Cir. 3/11/94), 634 So.2d 14, 17. Part of this duty is to effectuate equitable distribution among all classified employees in accordance with the basic purposes of a merit system. Thoreson v. Dep’t of State Civil Serv., 433 So.2d 184, 202 (La.App. 1st Cir.), writs denied, 440 So.2d 726, 727 (La.1983).

Equal Protection

The guarantees of equal protection provided under the Louisiana and United States constitutions differ. The equal protection guarantee under the Louisiana Constitution is found in Article I, Section 3, which provides, in pertinent part:
No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations.
The Louisiana Supreme Court has described the equal protection analysis pursuant to this article as follows:
La. Const. Art. 1, § 3 provides for three levels of constitutional review or scrutiny. Laws which classify individuals based on race or |7religious beliefs are repudiated completely. An intermediate level of scrutiny is reserved for laws which classify persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliation. The lowest level of scrutiny applies to laws which classify per *34 sons on any basis other than those enumerated in La. Const. Art. I, § 3. Such laws need only be rationally related to a legitimate governmental purpose, and a person attacking the constitutionality of such a classification has the stringent burden of demonstrating that the law does not suitably further any appropriate state interest. (citations omitted).
Soloco, Inc. v. Dupree, 97-1256 (La. 1/21/98), 707 So.2d 12, 15. Accordingly, laws which classify persons on any basis other than those specifically enumerated are subject only to minimal scrutiny. Progressive Security Ins. Co. v. Foster, 97-2985 (La. 4/23/98), 711 So.2d 675, 686.
The equal protection guarantee of the United States Constitution is provided by the Fourteenth Amendment, which states, in pertinent part, “No State shall ... deny to any person within its jurisdiction the equal protection of the laws.” The classifications of persons and levels of scrutiny accorded those classifications are not described in the article, but have been jurisprudentially developed by the United States Supreme Court. Strict scrutiny is applied to governmental action if a classification infringes on a fundamental or express constitutional right or if it discriminates on the basis of a “suspect” classification, such as race. Such a law is presumed unconstitutional and will be upheld only if it is necessarily related to a compel-' ling state interest. A classification that discriminates based on certain classes, such as gender or illegitimacy, will be upheld if it is substantially related to a legitimate state interest. The lowest level of review is applicable to any other classification and requires the challenging party to prove that the classification is not rationally related to any legitimate government interest. LAGC v. State, through Div. of Admin., 95-2105 (La. 3/8/96), 669 So.2d 1185, 1195-96.
ANALYSIS
The historical facts in this ease clearly establish that the supplemental pay provision for state police and officers of the DWF enforcement division was proposed, discussed, and passed as an exception to the uniform pay plan regulating all other classified civil service employees. Without removing those employees from the state civil service system, they were separately classified and granted additional pay on a basis outside the uniform pay plan.[6] By its very nature, therefore, this classification and ^supplemental pay infringed upon the uniform pay plan established for all state civil service employees.
The challenged classification in this case distinguished commissioned officers of DWF on the basis of their duties; those whose only duty was law enforcement were differentiated from those who performed law enforcement in addition to other duties. Therefore, the state actions based on this classification require only the lowest level of scrutiny under either the Louisiana or United States constitutions, namely whether the acts are rationally related to a legitimate state interest. Soloco, Inc., 707 So.2d at 15. Based on our review of the record, we conclude, as did the trial court, that there are no genuine issues of material fact. Therefore, the only issue is the legal issue of whether the plaintiffs were denied the equal protection of the law. To satisfy their burden of proof on their motion for summary judgment, the plaintiffs had to establish that the classification and the allegedly discriminatory state action based on it were not rationally related to a legitimate state interest.
The trial judge noted that the evidence clearly demonstrated that not all DWF commissioned officers had the same job duties and responsibilities. In many ways, they were not similarly situated, and if the issue were merely salary levels, the differences might justify pay variations. We agree. The plaintiffs are DWF employees who are assigned to particular wildlife management areas or refuges, and their responsibilities include caring for and protecting the wildlife and environments of those areas, as well as maintaining the facilities and equipment. They may spend large portions of their time in such varied activities as checking nesting sites for wood ducks, seeding areas for mi *35 gratory waterfowl, testing the salinity of marsh areas, conducting controlled burns of specified forest areas, clearing roads and paths, or planting native grasses or trees. While involved in these activities, their only participation in law enforcement involves taking corrective action if they notice a violation occurring, and preventing violations by serving as a continuous law enforcement presence. On the other hand, the members of the DWF enforcement division perform only law enforcement and are not assigned to a particular wildlife management area or refuge. Their térritories extend throughout the state and they often enforce the laws on privately owned property.
The defendants argue that, for equal protection analysis, the inquiry should have ended with the trial judge’s factual finding that the plaintiffs were (and are) not similarly situated to those in the enforcement division who received supplemental pay and later, | agrade and salary increases. However, this argument misses the point. As noted by the trial court, from its inception, this ease does not involve a differentiation in salaries based on job descriptions, training, and education. Instead, this case involves an exception to the uniform pay system in the form of supplemental pay — outside the uniform pay plan — for a particular group of people, to the exclusion of another group of people. Accordingly, the trial judge carried the analysis further and asked whether the supplemental pay was based on differences in duties, training, and expertise, or was it based on something else entirely. He concluded from the evidence that the reason supplemental pay was given was to compensate those receiving it for hazardous conditions they encountered in connection with their enforcement duties, and then asked whether the plaintiffs were similarly situated to those who benefited from the classification, with respect to this reason. Based on the type of payments involved in this lawsuit, we believe the trial judge was correct in carrying this analysis further, to determine whether all DWF commissioned officers were similarly situated with respect, to the nature of these payments as hazardous duty pay.[7]
Since our review is de novo, we have examined the record to' ascertain the correctness of the trial court’s judgment with respect to three issues presented by the above stated analysis: first, was supplemental pay granted because the DWF employees encountered hazardous conditions in connection with their enforcement duties; second, with respect to this reason, were the plaintiffs similarly situated to the DWF enforcement division officers; and third, if they were similarly situated, was the different treatment afforded the plaintiffs nonetheless rationally related to a legitimate state interest, such that the different treatment was not a denial of their right to equal protection under the law.

Hazardous Duty Pay

The Louisiana Constitution of 1974 provides no explanation for the authority given to the legislature to supplement the pay of state policemen and officers of the DWF enforcement division. However, excerpts from the transcript of the constitutional | ipconvention reveal that the focus of the discussion was state police officers. The concern was that local law enforcement officers, who were not included in the state civil service system, were receiving supplemental pay. This resulted in an inequitable situation for the state policemen, which the civil service uniform pay plan did not rectify. The delegates expressed the fear that if the pay of the state police were not kept competitive with that of local law enforcement officers, the state police force would no longer attract the quality of personnel it needed. *36 The argument was made quite succinctly by one of the delegates, as follows:
MR. HERNANDEZ
[T]he justification is simply this: in the case of city and parish law enforcement officers, which are not under the direction of the state legislature, they have enacted a program of supplemental pay. Now, if they are going to give supplemental pay to those city and [parish] police officers over which they have no control, why should they not extend this same supplemental pay to the state police that are the real law enforcement officers of this state around; it’s just to correct an inequity, that is all.
Another delegate commented:
MR. DREW
[T]his is hazard ... complete hazard; it’s hazard every hour of the day that they are on duty and every hour of the day that they are off-duty because they are subject to call. If there ever was an exception that needed to be made, it is on behalf of the Louisiana State Troopers.
After considerable discussion along these lines, the proposal allowing the legislature to supplement the pay of state troopers passed. Several days later, one of the delegates brought up the subject of DWE officers engaged in law enforcement, and proposed that the legislature be authorized to supplement their pay also. The statement of the delegate proposing the amendment included the following
MR. AVANT
Mr. Chairman and fellow delegates, if you will recall one of the last days that we met here before we recessed for the holiday season, we adopted an amendment to the civil service provisions which would allow the legislature to supplement, if in their wisdom they saw fit to do so, a civil service pay plan for the uniformed enforcement officers of the division of state police .... It has come to my attention that the enforcement officers of the Department of Wildlife and Fisheries, your game wardens, if you choose to use that term, are a group of law enforcement officers who have in many, many particulars the same hazards as do the officers of the state police. For example, in the enforcement of the wildlife and fishery laws and regulations, they daily encounter in remote areas people who almost universally are armed.
He recalled an incident when DWF enforcement officers apprehended an escaped murderer who had eluded regular police officers in the swamps of the Atchafalaya InRasin. The only other discussion before the amendment passed was the following:
MR. LE BLEU
Mr. Chairman and fellow delegates, this is just an effort to do for the enforcement officers of the Wildlife and Fisheries Commission what the legislature has done for the municipal police, deputy sheriffs, state police and so forth, and I ask you to please go along with us on this amendment.
Affidavits from several delegates to the constitutional convention confirmed their understanding that this provision was intended to allow supplemental or “hazardous duty” pay for all DWF officers who conducted enforcement activities in their job responsibilities; all “game wardens” conducting enforcement activities on the remote refuges and game management areas were to be included. There was no conscious intent to distinguish the officers in the enforcement division from other DWF officers who also had law enforcement duties.
Based on this minimal evidence concerning the actual basis for the supplemental pay provision in the Louisiana Constitution, we conclude the impetus for the supplemental pay was additional compensation for state police to bring them to the same level as local law enforcement officers who were receiving supplemental pay. The addition of DWF enforcement division officers apparently was an afterthought, and the only justification provided for their inclusion was the hazardous conditions they, as well as state troopers, encountered as a result of their law enforcement duties. Accordingly, we agree with the trial court that the supplemental pay for DWF enforcement division officers was in the nature of hazardous duty pay.

Similarly Situated

Title 56 of the Louisiana Revised Statutes, entitled “General Provisions for Wildlife and Fisheries,” contains a vast body of hunting *37 and fishing laws governing commercial and recreational activities, including licensing qualifications, seasons for taking certain types of wildlife and fish, numbers allowed to be taken, methods and equipment allowed or prohibited, and penalties to be imposed for violations. The responsibility for enforcing these laws is assigned to all DWF commissioned officers. See LSA-R.S. 56:53, 54, 55, and 55.2. All commissioned employees of DWF may carry concealed or exposed weapons in the performance of their duties. LSA-R.S. 56:53. Each wildlife agent must ascertain that every person dealing in any way with any of the wildlife, fish, and game of the state in territory assigned to him, has and possesses the appropriate license required for that activity. LSA-R.S. 56:54(A). Commissioned wildlife agents and commissioned employees of divisions other than enforcement may, without 112a warrant, arrest any person violating any of the laws or regulations under the jurisdiction of DWF, and may take such person into custody for examination or trial. They may also execute any warrant or other process issued by any officer or court of competent jurisdiction for the enforcement of such laws and regulations. LSA-R.S. 56:54(B). Whenever any commissioned wildlife agent has probable cause to believe that a violation has occurred, he may visit, and/or inspect and examine, with or without a search warrant, any records, cold storage plant, warehouse, boat, store, car, conveyance, automobile or other vehicle, airplane or other aircraft, basket or other receptacle, or any place of deposit for wildlife, fish, or game. LSA-R.S. 56:55(A). Even without probable cause or a search warrant, commissioned wildlife agents may inspect such places at frequent intervals to determine if any laws or regulations under DWF jurisdiction have been violated. LSA-R.S. 56:55(B). Additional authority is provided by LSA-R.S. 56:55.2, which states:
A. In view of the vast expanse of marsh and isolated wildlife habitat extant throughout the state, and to facilitate the effective protection of private and public rights and property, particularly in but not limited to these isolated areas, duly commissioned wildlife officers and agents of the enforcement division and other duly commissioned employees of the Department of Wildlife and Fisheries who have graduated from the Louisiana State University law enforcement training program, the Louisiana State Police Training Academy, or the Northeast Louisiana University law enforcement training program and those commissioned wildlife officers, agents, and employees, who are presently serving in the department prior to June 26, 1989, shall, in addition to the authority otherwise conferred by law upon such officers, be vested with the same authority and powers conferred by law upon other law enforcement officers of this state, provided that a qualification and requalification for firearms used be established within the department on at least an annual basis to insure the proficiency for firearms use by all officers vested with the authority and powers conferred herein.
B. All duly commissioned wildlife officers of the Department of Wildlife and Fisheries shall, in addition to the authority otherwise conferred by law upon such officers, be vested with the same authority and powers conferred by law upon other law enforcement officers of this state with respect to the following criminal offenses: arson, litter, theft, or burglary, observed during the performance of their normal duties, conduct constituting resisting arrest, and assault or battery of a commissioned wildlife officer. Additionally, while on special assignment during any riot, insurrection, or any natural disaster and in protection of immovable property of the Department of Wildlife and Fisheries, any commissioned wildlife officer of the department shall possess all the powers and authority of regular law enforcement officers of this state. For the purposes of this Section, the enforcement division and other divisions of the Department of Wildlife and Fisheries are authorized to seek, accept, and expend state or federal funds, or both, available for such purposes. (Emphasis added.)
These statutes and others in Title 56 establish that, with respect to enforcement duties which may put them in hazardous situations, the plaintiffs are, as a matter of positive *38 1 iglaw, similarly situated to the DWF officers in the enforcement division, as long as the required training and firearms qualifications are met. See also LSA-R.S. 56:56, 57, 648.3, and 787. The record establishes that the plaintiffs meet the training and firearms qualifications requirements of these statutes. In addition, the record in this case demonstrates that all agents are, as a matter of fact, subjected to the hazards inherent in enforcing the law. In response to a request for admissions, the defendants admitted that the plaintiffs are required to wear badges and identification, carry guns, patrol remote areas, make arrests, gather evidence, and testify in court. Although the plaintiffs are not engaged solely in law enforcement duties, while they perform their other responsibilities, they are always expected to be aware of anything in their surroundings which might suggest that a violation of the law has occurred, and they are always called upon to take action if and when violations are discovered. Accordingly, we conclude the record supports the trial court’s conclusion that, with respect to hazardous duty, the plaintiffs are similarly situated to the DWF officers in the enforcement division.

Rational Relationship to a Legitimate State Interest

Given our conclusion that the plaintiffs are similarly situated to the DWF officers in the enforcement division with respect to hazardous duty, is there nevertheless some legitimate state interest justifying the differential treatment given them? We cannot discern from the evidence in this case, nor have we been able to independently derive, any reason why the state would want to treat one division of its DWF commissioned officers differently from the other divisions, since all of them enforce the laws and are exposed to hazardous conditions in accomplishing their duties. There is no evidence suggesting that DWF was experiencing difficulty in recruiting enforcement division agents, as opposed to other types of commissioned officers, such that additional pay might be required to attract and retain personnel for that division. Nor is there any evidence that the work performance of DWF agents needed to be upgraded with respect to their law enforcement duties, which might justify offering additional pay to attract a higher caliber of employee to perform those duties.
The defendants maintain that the enforcement division currently has different qualifying requirements, education, and training justifying the additional pay received by its employees. However, as previously noted, most of those differences developed gradually over the course of this litigation and did not affect the hazardous nature of the work done by all DWF commissioned officers, including the plaintiffs. And, as noted by | Mthe trial court, the 1990 substitution of grade level and salary increases for supplemental pay was not a bona fide adjustment for differences in qualifications, education, training, and job duties. The evidence, including the conditional nature of the legislation repealing LSA-R.S. 56:696, clearly shows the only reason the grade levels and salaries of the DWF enforcement division officers were raised was to allow them to receive, in salary, the same amount they were receiving before the supplemental pay was terminated. In essence, therefore, the increased salaries were just disguised supplemental pay. Accordingly, the discriminatory treatment of the plaintiffs by way of grade level and salary increases was no more rationally related to any legitimate state interest than was the discriminatory treatment in the form of supplemental pay.
For these reasons, we agree with the trial court that the plaintiffs were denied the equal protection of the law under the United States and Louisiana constitutions and were denied their right to a uniform pay system as classified state civil service employees. However, the judgment awarded the plaintiffs $260 per month from April 11, 1987, through the present. As we have noted, the nature of the plaintiffs’ duties was radically changed in September 1996, when they were relieved of all law enforcement duties.[8] Because the supplemental pay, and the subse *39 quent grade level and salary increases, were compensation for hazards encountered in law enforcement, we are of the opinion that this change establishes a termination point for those pay increases. Accordingly, the judgment will be amended to reflect that the pay increases awarded by the trial court continue only as long as the plaintiffs are involved in law enforcement duties.
CONCLUSION
For the above reasons, the judgment of the trial court is amended to reflect that the $260 per month awarded to the plaintiffs since April 11, 1987, continues only for the period during which they were or are involved in law enforcement duties, up to September 1996. In all other respects, the judgment is affirmed.
AMENDED AND, AS AMENDED, AFFIRMED.

. Other issues raised by the plaintiffs’ petition were not considered.

. Some of the persons named in their capacities as department heads were later substituted with the persons currently holding those positions. Also, the Louisiana State Employees Retirement System, which was named in an amended petition, was later dismissed from the suit.

. The record we are reviewing for this appeal is incomplete, in that other motions and exceptions were decided by the trial court during the course of the litigation before the motions for summary judgment were heard. Because these other pleadings and decisions were not directly related to the matter before this court, the parties correctly did not designate them for inclusion in the record transmitted to us.

. Although the record transmitted to us does not contain any decision of the court to explain why this date was chosen, we note that it is exactly three years before suit was filed. An exception of prescription filed by several defendants early in the case alleged, among other things, that a three-year prescriptive period applied to the plaintiffs’ cause of action for past due wages. Apparently, the court accepted this as a correct statement of the law in ruling on this exception and for that reason disallowed any claims for supplemental pay or wages which may have accrued before April 11, 1987. The choice of this date is not disputed by any of the parties.

. The sentence removing state policemen from the state civil service system was added in an amendment approved by the voters in October 1990. 1990 La.Acts 1106, § 1. By this amendment, a separate "state police service” was also established.

. As noted above, a later amendment removed the state police from the state civil service system; the officers of the DWF enforcement division, however, remained a part of that system.

. We note, however, the evidence reflects that, during the pendency of this litigation, the differences between the two groups in all of these areas have increased, perhaps as a response to the plaintiffs’ claims. New training courses have been introduced for DWF enforcement division officers and different qualifying standards are now required for applicants for those positions. Additionally, in September 1996, James H. Jenkins, Jr., then head of DWF and the Wildlife and Fisheries Commission, removed all law enforcement duties from DWF commissioned officers not in the enforcement division, thus effectively terminating any entitlement to hazardous duty pay of any kind for those officers as of that date. The legality of that action in the light of the mandates of Title 56 of the Louisiana Revised Statutes, although discussed by the plaintiffs in briefs, is not an issue in this appeal.

. Because the legality of this action is not an issue before this court in this proceeding, we must accept the changed job responsibilities as the current reality, and recognize that the plaintiffs are no longer required to participate in law enforcement in any capacity.