# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 06-1439


CHARLES BRYANT

VERSUS

CITY OF ALEXANDRIA


**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 219,385
HONORABLE F. RAE SWENT, DISTRICT JUDGE

**********

## MARC T. AMY
## JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and Glenn B. Gremillion, Judges.

**REVERSED.**


Daniel E. Broussard, Jr.
Broussard, Bolton, Halcomb and Vizzier
Post Office Box 1311
Alexandria, LA   71309
(318) 487-4589
COUNSEL FOR PLAINTIFF/APPELLEE:
    Charles Bryant

Daphne R. Robinson
Post Office Box 13616
Alexandria, LA   71315
(318) 443-2771
COUNSEL FOR DEFENDANT/APPELLANT:
    City of Alexandria

AMY, Judge.

The plaintiff, an employee of the City of Alexandria, requested that the Alexandria Civil Service Commission review his wages as an increase in the hourly wage received by certain employees resulted in him earning less than those under his supervision. The Civil Service Commission declined his request. Upon appeal to the Ninth Judicial District Court, the trial court reversed the Civil Service Commission's determination and ordered that the plaintiff's wages be raised by one pay step above those under his supervision. The City of Alexandria appeals. We reverse.

### Factual and Procedural Background

The record indicates that the plaintiff, Charles Bryant, is employed as a Crew Leader[1] by the City of Alexandria, Department of Electric Distribution. In July 2001, he filed a "request for an appeal" with the Alexandria Civil Service Commission, asserting that as a result of its earlier decision to increase "the starting pay of linemen in the Department of Electric Distribution, Mr. Bryant now supervises three (3) lineman employees who make a $1.71/hr. more than he does." He further complained that "the City recently filled the position of Service Worker from the lineman pool at Grade 117. That employee now makes $18.92/hr. while Mr. Bryant makes $15.97/hr." Thus, Mr. Bryant requested an appeal and that "the above pay discrepancies and inequities be investigated and that he be paid a salary

---

[1] The job description of Crew Leader, a Grade 117 position, is contained within the record. The description lists the "Characteristics of the Class" as:

> Under the general direction of a designated supervisor, performs technical work in and has lead worker responsibility over employees engaged in the performance of varied and complex construction, maintenance, repair, and operational activities. Incumbent may be on 24-hour call out for emergency situations and work may be hazardous. Position is responsible for obtaining necessary materials, providing training and instructions for a crew, and ensuring safety procedures are followed on each job. Work is assigned orally and in writing and is reviewed while in progress and upon completion. Work is also reviewed through conferences and written reports for adherence to established policies and procedures. Performs other work as requested.

commensurate with the job that he is presently performing as a Crew Leader." He further asked that any salary adjustment be made retroactive.

The City acknowledged the pay discrepancy and, in its brief to this court, traces the differential to difficulty in attracting qualified candidates to two Senior Electric Line Worker[2] positions in 2000. According to the City, it requested that the Civil Service Commission approve an increase in the original rate of pay for the Senior Electric Line Worker position to $17.00 per hour in order to be more competitive with the private sector. This proposed increase was permitted for the three highest ranking eligible candidates for the Electric Line Worker positions. Thereafter, the wage of others employed in the same position was increased to the proposed minimum rate in their class. As these increases affected only the line worker positions, Mr. Bryant's pay did not increase although, as Crew Leader, he was an experienced line worker and possessed the qualifications of those under his supervision.

After a period of delay, the Civil Service Commission denied Mr. Bryant's appeal in November 2004. The transcript of the hearing indicates that the Civil

_____

[2] The job description of the Senior Electric Line Worker, a Grade 116 position, lists the Characteristics of the Class as:

> Under the general direction of a designated supervisor, performs skilled, independent work in the installation, maintenance, and repair of power lines and related components of the electrical distribution system. Position is subject to 24-hour call and work is sometimes hazardous. The objective is the application of electrical skills and knowledge to a variety of electrical problems, including diagnosis of power problems. Incumbents have completed required courses and obtained certification. Work is reviewed through conferences and written reports for adherence to established policies and procedures. Performs other work as requested.

The Characteristics of the Class for an Electric Line Worker, a Grade 112 position, are described as:

> Under the general direction of a designated supervisor, installs and restores electrical service to residential and commercial customers. Position is subject to 24-hour call and work is sometimes hazardous. Work is reviewed through conferences and written reports for adherence to established policies and procedures. Performs other work as requested.

2

Service Commission and the City were aware of the problems, but questions remained as to the method of addressing the problem systemically.[3]  In light of this concern, and although it denied Mr. Bryant's claim, the Civil Service Commission directed that a rule be drafted indicating that a supervisor be paid five percent above the highest paid subordinate.  The record does not reveal what action, if any, followed that instruction.

Thereafter, Mr. Bryant appealed to the Ninth Judicial District Court.  In a "Rule to Show Cause," he explained that he was seeking "an appeal by Charles Bryant from the decision of the Alexandria Civil Service Commission rendered on November 17, 2004 denying his appeal to that Board that it correct pay inequities that arose between he and the linemen he supervises when the Commission raised the pay

---

[3]  Consistent with the transcript, the minutes of the hearing reflect:

Chairman Ford explains this matter was presented to the Commission in 2001.  Mr. Bryant filed an appeal because his salary as a Crew Leader is lower than the salary of the employees he supervises.  All parties consented to tabling the decision in the matter pending a resolution that would be acceptable to all parties.  No solution had been reached; therefore, the matter was before the Commission again for a decision.  Dan Broussard represented Mr. Bryand and Barry Laiche and Daphne Robinson represented the administration.  Both sides presented facts pertinent to their case.  Chairman Ford asked what relief Mr. Bryant sought.  Mr. Broussard stated his client was seeking the job description of Crew Leader be revised and reevaluated to be graded higher in order for Mr. Bryant to receive an increase in salary.

After closing statements, Mr. Harvey made a motion to go into Executive Session, which was seconded by Dr. Nassif.  All were in favor.

Motion Carried.

The Commission returned to regular session at 5:25 p.m. with a motion made by Mr. Douglas and seconded by Mr. Nassif.  All were in favor.

Motion Carried.

Dr. Nassif made a motion to instruct the Director to draft a rule that any person in a supervisory position be paid 5% above the highest paid subordinate and, based on that motion, the appeal of Mr. Bryant be denied.  It was seconded by Dr. Weinzettle.  A roll call vote was in favor of the motion four to one.  Mr. Harvey abstained from voting.

Motion Carried.

3

of the linemen." Following a hearing, and after the trial court delayed its decision for

a period in an effort to have the City resolve the pay discrepancy, the trial court ruled

in favor of Mr. Bryant and rendered the following judgment:

> This cause having come on for hearing on May 15, 2006 on a Rule to Show Cause filed by Appellant, Charles Bryant and the Court, having delayed its decision for a period of sixty (60) days to give the City of Alexandria time to correct the inequities complained of by Appellant, and it having been represented that no corrective action has been taken by the City and now having considered the entire record filed by the Alexandria Civil Service Commission and the memoranda and arguments of counsel, and finding that the law and evidence to be in favor of Appellant, Charles Bryant, for the oral reasons assigned on May 15, 2006;
>
> IT IS ORDERED, ADJUDGED AND DECREED that the decision of the Alexandria Civil Service Commission dated November 17, 2004 denying Appellant's Civil Service Appeal be and it is hereby reversed; and
>
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Appellant, Charles Bryant, against the City of Alexandria, raising Appellant's pay as a Crew Leader to an amount equal to one (1) pay step in the City Pay Plan above that of Senior Line Workers for the City of Alexandria, said increase to be retroactive to July 19, 2001, the date of filing of Appellant's appeal, and to include all subsequent across-the-board employee raises given by the City and with legal interest on all amounts from the date of the appeal or date due, whichever is later until paid.

The City appeals that determination.

### Discussion

*Jurisdiction*

We first consider the jurisdictional basis for this court to review this matter.

*See Boudreaux v. State, DOTD*, 01-1329 (La. 2/26/02), 815 So.2d 7 (wherein the

supreme court observed that the court has a duty to examine subject matter

jurisdiction *sua sponte*). However, neither the record nor the parties' initial briefs

contained sufficient information to determine the jurisdiction of the lower court or of

4

this court to review the decision of the Alexandria Civil Service Commission. *See* Uniform Rules, Courts of Appeal, Rule 2-12.4.[4] Thus, upon order of this court, the parties filed supplemental briefs on the issue of jurisdiction and provided further authority for the procedural path of this case.

Louisiana Constitution art. 10, § 1, *et seq.* pertain to the creation and procedures of the State and City Civil Service Systems. While Alexandria is excluded from the definition providing for a "city civil service commission" at Section 4(A), as it requires that such a commission "shall exist in each city having a population exceeding four hundred thousand," Article 10, § 15[5] indicates that a municipality of a population of less than four hundred thousand may establish a

_____

[4] Rule 2-12.4 (emphasis added) provides that an appellant's brief shall include, in part:

> The brief of the appellant or relator *shall set forth the jurisdiction of the court*, a concise statement of the case, the action of the trial court thereon, a specification or assignment of alleged errors relied upon, the issues presented for review, an argument confined strictly to the issues of the case, free from unnecessary repetition, giving accurate citations of the pages of the record and the authorities cited, and a short conclusion stating the precise relief sought.

[5] Article 10, § 15 provides:

> Nothing in this Part shall prevent the establishment by the legislature, or by the respective parish governing authority, of a parish civil service system in one or more parishes, applicable to any or all parish employees, except teaching and professional staffs and administrative officers of schools, or the establishment by the legislature or by the respective municipal governing authority of a municipal civil service system in one or more municipalities having a population of less than four hundred thousand, in any manner now or hereafter provided by law. However, paid firemen and paid municipal policemen in a municipality operating a regularly paid fire and police department and having a population exceeding thirteen thousand, and paid firemen in all parishes and in fire protection districts, are expressly excluded from such a civil service system.

> Nothing in this Part shall permit inclusion in the local civil service of officials and employees listed in Section 2 of this Article.

> No law enacted after the effective date of this constitution establishing a civil service system applicable to one or more parishes or to one or more municipalities having a population of less than four hundred thousand shall be effective in any parish or in any municipality until approved by ordinance adopted by the governing authority of the parish or municipality.

municipal civil service system. Thus, in Section 4-08 of its Home Rule Charter, adopted in 1977, the City of Alexandria established:

> The classified civil service system for the City of Alexandria heretofore established by Act 487 of 1954, as amended by Act 120 of 1962, Act 396 of 1964, and as may be amended by the legislature in the future is hereby incorporated in this charter and shall continue in full force and effect and be carried out and regulated in accordance with the provisions of said statutes, except as the same may be inconsistent with the provisions of this charter, in which case the provisions of this charter shall prevail.

This matter appeared before the Alexandria Civil Service Commission per Rule 8, Section 1.1 of the Alexandria Civil Service Commission Rules and Regulations, which provides, in part:

> Any regular employee in the classified service, subject to the provisions of this Act, or the rules made pursuant thereto, who deems that he or she has been improperly treated, discriminated against, or denied any right under the provisions of this Act, or who deems that he or she has been removed, dismissed, retired, reduced in pay, demoted, subjected to a second suspension of sixty (60) days or less without pay, or subjected to any other disciplinary action set out in Section 19 of this Act, without just cause, may, within thirty (30) days of such action, demand a hearing to determine the reasonableness of such action, and the Commission shall grant the employee a hearing within ninety (90) days after receipt of such request, as provided in Section 19 of this Act.

*See also* Alexandria Civil Service Commission Rules and Regulations, Rule 8, Section 1.3.[6]

---

[6]  Section 1.3 provides:

> Where any appeal is taken to the Commission by an employee under the provisions of Section 19 of the Civil Service Law, the proceedings shall be conducted as nearly as possible in accordance with court trials but without any of the formalities incident thereto. The appointing authority who has removed or disciplined the employee shall first present to the Commission the evidence in support of his action; the employee shall then submit the evidence in support of his appeal. The appointing authority shall have the right of rebuttal but same shall be limited strictly to matters that contradict evidence offered by the defendant in general accord with the legal rules of evidence on the subject. The time, place, hours for hearing shall be fixed by the Commission in such case and notice thereof given to those involved. The evidence shall be limited to the charges contained in the written reasons given by the appointing authority for his discharge or disciplining of the employee,

Thereafter, Mr. Bryant pursued an appeal of the Civil Service Commission in the Ninth Judicial District Court as provided for by 2001 La. Acts No. 390, § 2, as follows:

> Act No. 487 of the 1954 Regular Session of the Legislature, as amended and reenacted by Act No. 655 of the 1997 Regular Session of the Legislature is hereby amended and reenacted to read as follows:
>
> . . . .
>
> [Section 1.] (H) *In the event the city of Alexandria or any interested person is aggrieved by a decision of the commission, the aggrieved party may appeal from the decision of the commission to the Ninth Judicial District Court*, Parish of Rapides, or its successor.

(Emphasis added.)

As set forth in La.Const. art. 5, § 16, the jurisdiction of the district court is:

> **(A) Original Jurisdiction.** (1) Except as otherwise authorized by this constitution or except as heretofore or hereafter provided by law for administrative agency determinations in worker's compensation matters, a district court shall have original jurisdiction of all civil and criminal matters. (2) It shall have exclusive original jurisdiction of felony cases and of cases involving title to immovable property, except as provided in (3) below; the right to office or other public position; civil or political right; probate and succession matters; except for administrative agency determination provided for in (1) above, the state, a political corporation, or political subdivisions, or a succession, as a defendant; and the appointment of receivers or liquidators for corporations or partnerships. (3) The legislature may provide by law that a family court has jurisdiction of cases involving title to movable and immovable property when those cases relate to the partition of community property and the settlement of claims arising from matrimonial regimes when such action arises as a result of divorce or annulment of marriage.
>
> **(B) Appellate Jurisdiction.** *A district court shall have appellate jurisdiction as provided by law.*

---

or stated in the written request for a hearing. The employee or appointing authority shall have the right to appear before the Commission in such matters with counsel of their own choosing. Appeals for hearings from any other source shall be made in writing, stating the charges, and the evidence shall be limited to the charges contained in the written reasons for the appeal, and procedure shall be as above described in this paragraph. Appeals from other sources shall be governed by time limits as in paragraph 1.1.

(Emphasis added.) In this case, the district court considered this matter under appellate jurisdiction as conveyed by Article 5, § 16(B) and 2001 La. Acts No. 390, § 2, above. Mr. Bryant's Rule to Show cause filed below was clearly styled as an "appeal." The matter was submitted to the trial court on memoranda and following a hearing. It appears that no new evidence was taken.

As an appeal has been taken, we consider whether the appeal before this court may now be maintained. An appellate court's jurisdiction is established in La.Const. art. 5, § 10 (emphasis added), which provides:

> **(A) Jurisdiction.** *Except as otherwise provided by this constitution, a court of appeal has appellate jurisdiction of (1) all civil matters*, including direct review of administrative agency determinations in worker's compensation matters as heretofore or hereafter provided by law, (2) all matters appealed from family and juvenile courts, and (3) all criminal cases triable by a jury, except as provided in Section 5, Paragraph (D)(2) of this Article. It has supervisory jurisdiction over cases which arise within its circuit.
>
> **(B) Scope of Review.** Except as limited to questions of law by this constitution, or as provided by law in the review of administrative agency determinations, appellate jurisdiction of a court of appeal extends to law and facts. In the review of an administrative agency determination in a worker's compensation matter, a court of appeal may render judgment as provided by law, or, in the interest of justice, remand the matter to the administrative agency for further proceedings. In criminal cases its appellate jurisdiction extends only to questions of law.
>
> **(C) Other Criminal Matters.** In all criminal cases not provided for in Paragraph (D)(2) or Paragraph (E) of Section 5 or Paragraph (A)(3) of this Section, a defendant has a right of appeal or review, as provided by law.

In *Touchette v. City of Rayne*, 321 So.2d 62, 64 (La.App. 3 Cir. 1975), this court remarked that: "Under the 1974 Constitution, even if the district court review is an appeal, this court has jurisdiction to review that decision. Appellate jurisdiction is no longer based on the nature of the jurisdiction exercised by the district court." As

8

this indicates that appellate jurisdiction exists, we turn to consideration of the City's assignment of error.

*Wage Increase*

The City acknowledges that Mr. Bryant's pay is less than those under his supervision. However, it points to its rationale in increasing the wage rate of the line workers, *i.e.*, its inability to attract qualified applicants at the existing wage rate. Mr. Bryant continues to assert that he is being treated differently from others similarly situated.

Although the judgment reflects that oral reasons for ruling were issued by the trial court at the time of its hearing, the transcript reveals only the trial court's struggle to identify the appropriate way to address the pay differential and its interim decision to remand the matter for the City to address the situation within sixty days. After the Civil Service Commission and the City failed to rectify the situation during that period, the trial court ordered an increase in Mr. Bryant's "pay as a Crew Leader to an amount equal to one (1) pay step in the City Pay Plan above that of Senior Electric Line Workers for the City of Alexandria . . . . and to include all subsequent across-the-board employee pay raises given by the City." On review, however, it is apparent that the trial court was without positive authority to exercise the wage setting function of the Civil Service Commission and the City.

As below, Mr. Bryant summarily argues that his request is based on principles of equal protection, implicating La.Const. art. 1, § 3,[7] and that the Civil Service

---

[7] Article 1, § 3 provides:

> No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the

9

Commission "has a constitutional trust to establish, implement and administer a uniform classification and pay plan." As for this latter argument, reference is made to both La.Const. art. 10, § 10[8] and *Thoreson v. Department of State Civil Service*, 433 So.2d 184 (La.App. 1 Cir.), *writ denied*, 440 So.2d 726 (La.1983), *writ denied*, 440 So.2d 727.

The Louisiana Supreme Court has explained the equal protection analysis attendant to La.Const. art. 1, as follows:

> LA. CONST. art. I, § 3 provides for three levels of constitutional review or scrutiny. Laws which classify individuals based on race or religious beliefs are repudiated completely. An intermediate level of scrutiny is reserved for laws which classify persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliation. The lowest level of scrutiny applies to laws which classify persons on any basis other than those enumerated in LA. CONST. I, § 3. Such laws need only be *rationally related* to a legitimate governmental purpose, and a person attacking the constitutionality of such a classification has the stringent burden of demonstrating that the law does not suitably further *any* appropriate state interest.

*Soloco, Inc. v. Dupree*, 97-1256, p. 4 (La. 1/21/98), 707 So.2d 12, 15 (citations omitted). The alleged disparate treatment in this case does not involve classifications enumerated in Article 1, § 3, and thus, the City's action need only be rationally

_____

latter case as punishment for crime.

[8] Article 10, § 10, applicable to the state and defined city civil service commissions, provides, in part:

> **(A) Rules. (1) Powers.** *Each commission is vested with broad and general rulemaking and subpoena powers for the administration and regulation of the classified service, including the power* to adopt rules for regulating employment, promotion, demotion, suspension, reduction in pay, removal, certification, qualifications, political activities, employment conditions, compensation and disbursements to employees, and other personnel matters and transactions; *to adopt a uniform pay and classification plan*; to require an appointing authority to institute an employee training and safety program; and generally to accomplish the objectives and purposes of the merit system of civil service as herein established. It may make recommendations with respect to employee training and safety.

(Emphasis added.)

related to a legitimate governmental purpose. The City argues that the higher pay offered to senior electric line workers, which caused the pay disparity, was rationally related to its need to be competitive with the private sector.

Mr. Bryant addresses the fact that he and the line workers are not of the same job classification/grade by advancing the case of *Marceaux v. State*, 97-273 (La.App. 1 Cir. 9/25/98), 720 So.2d 29, *writ denied*, 98-3134 (La. 2/5/99), 738 So.2d 10, wherein the first circuit considered a class action filed by certain Louisiana Department of Wildlife and Fisheries wildlife agents who did not receive supplemental pay and/or grade and pay increases available to those agents in the Department's enforcement division. The first circuit found no merit in the Department's assertion that the additional benefits for the enforcement division were due to the hazardous nature of their work. Rather, the court noted that it was unable to identify "any reason why the state would want to treat one division of its DWF commissioned officers differently from the other divisions, since all of them enforce the laws and are exposed to hazardous conditions in accomplishing their duties." *Id.* at 38. Thus, the first circuit concluded that the denial of the supplemental pay and/or grade and pay increases lacked a rational relation to a legitimate interest and thus, the plaintiffs were denied the equal protection of laws. *Id.*

However, the dissimilarity in the posture of *Marceaux* to this case is striking. This matter was instituted as an "appeal" by Mr. Bryant, *individually*, before the Civil Service Commission and then, again, as an "appeal" of that determination to the trial court. The limited record before us contains transcripts of the Civil Service Commissions and the trial court proceedings. Cursory statements regarding the parties' respective positions are contained therein. Mr. Bryant's memorandum

11

contains the job descriptions for Crew Leader, Senior Electric Line Worker, and Electric Line Worker.

In *Marceaux,* 720 So.2d at 31, however, the plaintiffs filed a class action by the affected workers and after what the first circuit described as "considerable discovery," the trial court resolved the issue on cross motions for summary judgment and to which were attached numerous exhibits, listed in the opinion. Thus, the court was able to render a decision utilizing the equal protection analysis before taking the considerable step of adjusting the pay plan of the department.

Rather than this case being analogous to *Marceaux,* the trial court's order would seemingly create a further pay differential insofar as the increased wages only affect Mr. Bryant, not other Crew Leaders. While true that this may relieve Mr. Bryant's problem, the decision could arguably compound any equal protection implications as it does not address others throughout the uniform pay plan.

Similar problems are seen in the reliance on *Thoreson*, 433 So.2d at 186, which also involved a class of plaintiffs who filed suit "to challenge the manner in which a Uniform Pay Plan was *applied to their classification* in the Civil Service System." In that case, the problem stemmed from partial implementation of a pay increase within the classification. Contrary to *Thoreson*, the trial court's order in this case creates a further problem within Mr. Bryant's own class. Moreover, *Thoreson* contains the following observation:

> [W]e note that Civil Service Rule 6.2 provides for approval by the Governor of a pay plan "in its entirety." To allow the Governor to approve a plan in less than its entirety, would circumvent the Commission's ultimate authority to establish "a comprehensive and unified [personnel] plan for all state employees." *Louisiana Civil Service League v. Forbes*, [246 So.2d 800, 808]. We hold that Civil Service Rule 6.2, following the intent of the Constitution with regard to

the Governor's approval, requires said approval to be of the entire plan.

> Therefore, we hold that there is no authorization in the Constitution, jurisprudence, or Civil Service rules of this State, which would authorize the Governor to modify or amend any Uniform Pay Plan recommended and established by the Commission. His authority is that of approval or disapproval of a plan, in its entirety. If the Governor chooses not to approve a plan, the proper recourse is to send the plan back to the Commission for its modification, in line with the purposes and intent of its Constitutional mandate.

*Id.* at 199.

Further reference to the Civil Service Commission proceedings indicates that, although it denied Mr. Bryant's immediate request, it noted intent to pursue options that would further a more uniform approach to the claimed inequities. The minutes of the commission proceeding reflect:

> Dr. Nassif made a motion to instruct the Director to draft a rule that any person in a supervisory position be paid 5% above the highest paid subordinate and, based on that motion, the appeal of Mr. Bryant be denied. It was seconded by Dr. Weinzettle. A roll call vote was in favor of the motion four to one. Mr. Harvey abstained from voting.

> Motion Carried.

Having reviewed the jurisprudence and relevant positive law in light of the facts of the plaintiff's case, we find no authority by which the trial court could have intruded upon the City and Civil Service Commission's role in administering its pay plan. Therefore, the trial court's judgment is reversed. The decision of the Alexandria Civil Service Commission denying Mr. Bryant's complaint is reinstated.

## DECREE

For the foregoing reasons, the trial court's judgment is reversed. The decision of the Alexandria Civil Service Commission denying Charles Bryant's complaint is reinstated. All costs of this proceeding are assessed to Mr. Bryant.

**REVERSED.**

13