David ERTMAN, Plaintiff,

v.

Jack A. FUSARI, Unemployment Compensation Administrator of the State of Connecticut, Defendant.

Civ. No. N–74–94.

United States District Court, D. Connecticut.

Dec. 21, 1977.

David N. Rosen, New Haven, Conn., for plaintiff.

Donald E. Wasik, Asst. Atty. Gen., Labor Dept. (AG–7), Hartford, Conn., for defendant.

## RULINGS ON PLAINTIFF'S MOTION TO CONVENE A THREE–JUDGE COURT AND ON DEFENDANT'S MOTION TO DISMISS

ZAMPANO, District Judge.

In this action, the plaintiff David Ertman[1] challenges the constitutionality of Conn.Gen.Stat. § 31–235(3), known as the "forty rule," which requires as a condition for unemployment compensation that the claimant's earnings in his base period reach "an amount at least equal to forty times his benefit rate for total unemployment."

## I

Plaintiff applied for unemployment compensation benefits as of January 6, 1974. His "base period" earnings, in accordance with Conn.Gen.Stat. § 31–230, consisted of his wages in the first four calendar quarters of the five quarters immediately preceding his application, i. e., the last quarter of 1972 and the first three quarters of 1973. These earnings as computed by the Connecticut Unemployment Compensation Department were as follows:

| | |
|---|---|
| 4th quarter 1972 | $ 275.00 |
| 1st quarter 1973 | 88.00 |
| 2nd quarter 1973 | – – – – |
| 3rd quarter 1973 | 2300.00 |
| Total Base Period Earnings | $2663.00 |

Under the statutory scheme, the sum of $89 was determined to be the plaintiff's "benefit rate," which rate is the amount payable to each claimant weekly as set by Conn. Gen.Stat. § 31–231a at one twenty-sixth, rounded to the next higher dollar, of the total wages paid to the employee in the quarter of his base period in which his earnings were highest. Since the plaintiff's total earnings were less than 40 times $89, he was declared ineligible for benefits under § 31–235(3). After an unsuccessful administrative appeal, this suit was instituted.

The plaintiff requests declaratory and injunctive relief, damages, and the convocation of a three-judge court pursuant to 28 U.S.C. §§ 2281, 2284.[2] The defendant moves to dismiss the complaint for failure to state a claim on which relief can be granted.

The plaintiff contends that the "forty rule" constitutes 1) an invidious and irrational discrimination against him and other persons with low incomes, contrary to the protections guaranteed by the Equal Protection Clause, and 2) a violation of the provisions of the Social Security Act, 42 U.S.C. § 503(a)(1) and (b)(1), which mandate that all eligible applicants for unemployment compensation receive full payment of benefits when due. The defendant, on the other hand, argues that the rule bears a rational relationship to a legitimate governmental interest and is constitutionally de-

---

1. Intervenor Sarah Capello asserts constitutional claims identical to those presented by plaintiff Ertman.

2. Because this action was commenced before August 12, 1976, the applicability of 28 U.S.C. § 2281 is not affected by the repeal of that statute by Public Law No. 94–381, 90 Stat. 1119, August 12, 1976.

fensible as a proper exercise of the legislative power in the administration of the State's unemployment compensation laws. The Court agrees.

## II

Connecticut first enacted an Unemployment Compensation Act in 1936. The program, like those in all other states, is a joint federal-state cooperative effort financed in part by funds furnished by the federal government under the Social Security Act, 42 U.S.C. § 501 *et seq.*; see also Federal Unemployment Tax Act, 26 U.S.C. § 3301 *et seq.* Before federal funds are expended for the administration of an unemployment compensation plan, the Secretary of Labor must certify that the program conforms to various federal standards. 42 U.S.C. § 503.[3]

■ The general purpose of the unemployment compensation program in Connecticut is to "relieve the hardship of involuntary unemployment caused by the failure of industry to provide stable employment." *Micca v. Administrator*, 26 Conn.Sup. 16, 17, 209 A.2d 682, 684 (1965); see also *Baldassaris v. Egan*, 135 Conn. 695, 698, 68 A.2d 120 (1949). Benefits are paid without reference to need; however, there are eligibility requirements which must be met before a claimant may receive benefits under the

Act. As presently codified, Conn.Gen.Stat. § 31–235 (1973),[4] there are three conditions for eligibility: 1) a claim for benefits must be filed in conformity with the provisions of the Act; 2) the claimant must be "available for work"; and 3) the claimant must satisfy the "forty rule."

Thus, Connecticut has both non-monetary (filing of claim and availability for work) and monetary ("forty rule") eligibility prerequisites.

The plaintiff's complaint is directed to only the monetary requirement, which has been a condition for eligibility, albeit in different forms and amounts, since the passage of the Act. Initially the provision required the claimant to have "earned wages during the first four of the five most recently completed calendar quarters in an amount at least equal to twenty-four times his weekly benefit rate" § 808d(a)(3) (1937). Subsequent amendments were as follows: in 1941, the amount was changed to "equal to one hundred and forty four dollars," § 718f; in 1945, the sum became "two hundred forty dollars," § 964h; in 1947, § 1389i added the language "some part of which amount has been paid in at least two different calendar quarters of such base period"; in 1953, there was an increase to three hundred dollars, § 3072d; and in 1965, to seven hundred fifty dollars, P.A. 550 § 4; in

---

**3.** Since Connecticut has not been informed by the Secretary that its plan is inconsistent with federal law, the Court must assume that the Secretary has deemed the State's eligibility criteria, including the "forty rule," to be in compliance with applicable federal statutes and regulations.

**4.** Conn.Gen.Stat. § 31–235 states:

An unemployed individual shall be eligible to receive benefits with respect to any week only if it has been found that

(1) he has made claim for benefits in accordance with the provisions of section 31–240 and has registered for work at the public employment bureau or other agency designated by the administrator within such time limits, with such frequency and in such manner as the administrator may prescribe, provided failure to comply with this condition may be excused by the administrator upon a showing of good cause therefor;

(2) he is physically and mentally able to work and is available for work and has been

and is making reasonable efforts to obtain work;

(3) He has been paid wages by an employer who was subject to the provisions of this chapter during the base period of his current benefit year in an amount at least equal to forty times his benefit rate for total unemployment; provided an unemployed individual who is sixty-two years of age or older and is involuntarily retired under a compulsory retirement policy or contract provision shall be eligible for benefits with respect to any week, notwithstanding subdivisions (1) and (2) of this section, if it is found by the administrator that he has made claim for benefits in accordance with the provisions of section 31–240, has registered for work at the public employment bureau, is physically and mentally able to work, is available for work, meets the requirements of subdivision (3) of this section and has not refused suitable work to which he has been referred by the administrator.

1967, P.A. 790 § 13 substituted "thirty times his benefit rate for total unemployment" in lieu of the seven hundred fifty dollars; and in 1973, the "forty rule" was enacted, § 31–235(3).

### III

■ The main issue as framed by the parties is whether the "forty rule" violates the principles of equal protection. Since no "suspect" classification or fundamental interest is here presented, the rule must be tested under traditional equal protection analysis which requires that the "legislative classification must be sustained unless it is 'patently arbitrary' and bears no rational relationship to a legitimate governmental interest." *Frontiero v. Richardson*, 411 U.S. 677, 683, 93 S.Ct. 1764, 1768, 36 L.Ed.2d 583 (1973); see also *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *Roundtree v. Berger*, 420 F.Supp. 282, 284 (E.D.N.Y.1976), aff'd, 430 U.S. 912, 97 S.Ct. 1322, 51 L.Ed.2d 590 (1977). "As in all equal protection cases, . . . the crucial question is whether there is an appropriate governmental interest suitably furthered by the differential treatment." *Police Department of Chicago v. Mosley*, 408 U.S. 92, 95, 92 S.Ct. 2286, 2290, 33 L.Ed.2d 212 (1972).

■ The "forty rule", as one feature of the legislation's overall eligibility scheme, was designed 1) to insure that benefits are paid only to those claimants who have demonstrated a genuine attachment to the labor market; 2) to conserve limited public resources in the administration of the State's unemployment compensation program; and 3) to conform Connecticut's eligibility standards to those of other states. When the "thirty rule" was enacted in 1967, its legislative history reveals the purposes were to strengthen the existing test (i. e. $750 in two different quarters) with respect to a claimant's demonstration of "attachment to the labor market" and to bring "Connecticut in line with other states which use this formula." *House Proceedings*, Vol. 12, Part 11, p. 4965 (1967). Representatives and Senators sponsoring the "forty rule" in 1973

expressed similar governmental interests in urging passage of the increased eligibility standard. For example, Senator Powanda commented:

"The Bill before you would increase the basic earnings test to forty times the weekly benefit amount or one and one-half times the individual's highest quarterly earnings—whichever is greater. Incidentally, the highest quarterly earnings are used to determine the individual's weekly benefit amount. Connecticut has the most liberal benefits of all states in the nation. As a result of these high benefits and the extended recession which we have experienced over the last three years, *the unemployment compensation from which these benefits are made became bankrupt about a year ago.* This required the borrowing of something in excess of forty million dollars to date and I've been advised through the Labor Department that by the end of April the amount borrowed from the Federal Government to meet current benefit payments will exceed fifty million dollars. While we can attribute most of the expenditures of nearly six hundred million dollars in benefit payments over the last three years to bona fide unemployed who have been laid off for a lack of work, some part of this large amount of moneys expended can be attributed to the relatively low eligibility requirements in the state (sic) of Conn. If we are to resolve the long range problem of rebuilding this Fund, *we should at least attempt to remove those persons who are collecting unemployment compensation benefits who are no longer truly looking for work. The new test will go a long way toward achieving that objective. The proposed qualifying wage is not out of line with most high benefit rate states and is in fact keeping with the great majority of them.* I'd like to stress that the qualifying formula provided for under this bill will do nothing to prevent the legitimate unemployed person from receiving benefits, but will affect persons who are not generally (genuinely?) attached to the labor force. This, I think, is the most im-

portant part of that bill. There's nothing designed in this bill to eliminate legitimate unemployed persons from receiving benefits. *It's designed to eliminate those persons who are floaters and who are not generally (genuinely?) attached to the labor force.*" (emphasis added) *Senate Proceedings*, Vol. 16, Part 3, pp. 927–928 (1973); see also *House Proceedings*, Vol. 16, Part 6, pp. 2503–2507 and p. 2533 (1973).

Moreover, Connecticut's eligibility concerns and goals in the application of its unemployment compensation program are reflected in the qualifying standards utilized by every other state. The moving papers reveal that all states require that an individual earn a specified amount of wages or work for a certain period of time within a base period, to qualify for benefits. While some states designate a flat amount with respect to the monetary eligibility standards, 28 states have formulas which use a certain number times either the weekly benefit rate or the high quarter wages of the claimants.

## IV

■ It is settled law that "[a] wide range of judgment is given to the several states as to the particular type of [unemployment compensation] statute to be spread upon their books." *Steward Machine Co. v. Davis*, 301 U.S. 548, 593, 57 S.Ct. 883, 894, 81 L.Ed. 1279 (1937). "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan v. Maryland*, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961). In the instant case, the legislative objectives—limiting the beneficiaries of the State's unemployment compensation program to those genuinely attached to the labor market and setting monetary eligibility requirements for recipients in order to preserve fiscal integrity—are clearly permissible and rational governmental interests which are fostered by the "forty rule." See, e. g., *Carmichael v. Southern Coal Co.*, 301 U.S. 495, 519–521, 57 S.Ct. 868, 81 L.Ed. 1245 (1937); *Woodward*

*& Lothrop, Inc. v. District of Col. Unemp. Comp. Bd.*, 129 U.S.App.D.C. 155, 157, 392 F.2d 479, 481 (1968); *Roundtree v. Berger*, supra, 420 F.Supp. at 284–285; *Nevills v. State of Illinois*, 388 F.Supp. 622, 625–626 (E.D.Ill.1974); *Romero v. Hodgson*, 319 F.Supp. 1201, 1203 (N.D.Cal.1970), *aff'd mem.*, 403 U.S. 901, 91 S.Ct. 2215, 29 L.Ed.2d 678 (1971); cf. *Dandridge v. Williams*, supra, 397 U.S. at 483–484, 487, 90 S.Ct. 1153.

■ It is true, as the plaintiff points out, that the "forty rule" has had a harsh impact on him due to his rather unusual pattern of work. Indeed, had he earned less in his highest quarter or had his benefit rate been reduced from $89 to $66 per week, he would have been eligible for benefits under the "forty rule." However, it is not the function of the Court to strike down or alter the State's unemployment compensation eligibility standards because an incidental individual inequality results from its operation; the remedy rests with the legislature. "In establishing a system of unemployment benefits the legislature is not bound to occupy the whole field. It may strike at the evil where it is most felt, . . . or where it is most practicable to deal with it . . . ." *Carmichael v. Southern Coal Co.*, supra, 301 U.S. at 519–520, 57 S.Ct. at 877. "General rules are essential if a fund of this magnitude is to be administered with a modicum of efficiency, even though such rules inevitably produce seemingly arbitrary consequences in some individual cases." *Califano v. Jobst*, —— U.S. ——, ——, 98 S.Ct. 95, 99, 54 L.Ed.2d 228 (1977). See also *Weinberger v. Salfi*, 422 U.S. 749, 781, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975).

"In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78 [31 S.Ct. 337, 55 L.Ed. 369.]"

*Dandridge v. Williams*, supra, 397 U.S. at 485, 90 S.Ct. at 1161. It is not inconsistent with equal protection for the State to address itself "to the phase of the problem which seems most acute to the legislative mind" or to select "one field and apply a remedy there, neglecting the others." *Williamson v. Lee Optical Co.*, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955).

### V

Therefore, it is the opinion of the Court that the constitutional contentions raised by the plaintiff are wholly insubstantial and devoid of merit. Accordingly, the motion for the convening of a statutory three-judge court is denied; the motion to dismiss the complaint is granted.[5] *Miller v. New York Stock Exchange*, 425 F.2d 1074, 1975 (2 Cir.), cert. denied, 398 U.S. 905, 90 S.Ct. 1696, 26 L.Ed.2d 64 (1970); *Green v. Board of Elections*, 380 F.2d 445, 449 (2 Cir. 1967), cert. denied, 389 U.S. 1048, 88 S.Ct. 768, 19 L.Ed.2d 840 (1968); cf. *Edelberg v. Illinois Racing Bd.*, 540 F.2d 279, 287 (7 Cir. 1976); *Expert Electric, Inc. v. Levine*, 399 F.Supp. 893, 899 (S.D.N.Y.1975), aff'd on other grounds, 554 F.2d 1227 (2 Cir. 1977).

---

5. For the reasons stated, the intervening complaint, filed by Sarah Capello, is also dismissed.