MAX N. TOBIAS, JR., Judge.
hThe plaintiff/appellant, Robert C. Estelle, appeals a trial court judgment upholding the constitutionality of La. R.S. 23:1600(5), in connection with his claim for unemployment benefits. After reviewing the record and applicable law, we also find that La. R.S. 23:1600(5) is rationally related to a legitimate state interest and, therefore, constitutional, thereby affirming the judgment below.
Mr. Estelle was a bellman at a hotel before he became unemployed. The Louisiana Workforce Commission (“LWC”) initially granted him unemployment compensation, based on his base-period wages that were more than double the $1,200 minimum required by law. However, Mr. Estelle administratively appealed because the agency had not taken into account the tips he had earned, which had been properly reported to the taxing authorities. The tips were more than twice the amount of his other wages. Once the LWC added in these additional earnings, it ruled Mr. Estelle ineligible for unemployment compensation because the distribution of his wages no longer satisfied the high-quarter-ratio requirement.
|2The LWC held a hearing in which Mr. Estelle’s only challenge was to the constitutionality of La. R.S. 23:1600(5), which requires that a claimant’s base period earnings be at least one and one-half times the earnings in his or her high-quarter of earnings. The Appeals Tribunal and, later, the LWC Board of Review (“the Board”) held that Mr. Estelle was ineligible to receive unemployment compensation, citing the high-quarter-ratio requirement of section 1600(5). The Board held that it “lacks jurisdiction as regards the constitutionality of any statute.”
The uncontested facts, established during a telephone hearing and entered as findings by the Board, are as follows:
*1138 [Robert Estelle] filéd a claim for unemployment benefits. At the time of his application, the base period used to calculate monetary eligibility was April 1, 2010, through March 31, 2011. [Mr. Estelle] was initially determined to be monetarily eligible for a weekly benefit amount of $28.00. [Mr. Estelle]’s initial monetary determination .indicated [that he had] earned $1,178 in the 4th quarter of 2010, and $1,511 in the first quarter of 2011. [Mr. Estelle] contested the initial monetary determination and presented wage proof in dispute of [the] Agency wage records.
The Agency conducted a wage investigation and determined that [Mr. Estelle]’s wages, including tips earned through employment with Interstate Management, were incorrect. Based on [Mr. Estelle]’s wage proof, the Agency determined [he] earned $5,525 in the 4th quarter of 2010 and $2,586 in the 1st quarter of 2011. [Mr. Estelle] did not earn wages in any other [base period] quarter. The “monetary reconsideration” found [him] monetarily ineligible for benefits once the additional wages were added. In reaching its determination, the Agency found that [Mr. Estelle] had not earned wages in insured work equal to at least one and one-half times the wages paid to him that calendar [quarter] in which his wages were highest pursuant to La. R.S. 28:1600(5). In order to qualify for benefits, [Mr. Estelle] was required to earn one and one-half times his high quarter wages in his | abase period, or $8,287 in base period wages. [He] earned $8,111 in his base period.
During the hearing, [Mr. Estelle] did not dispute the amount of his earnings. Rather, Claimant’s counsel argued that La. R.S. 23:1600(5) is unconstitutional and has no rational basis in its application.
The Board held that it lacked jurisdiction to consider the constitutionality of the statute and affirmed the decision of the LWC, holding that Mr. Estelle was ineligible to receive unemployment compensation, citing the high-quarter-ratio requirement of La. R.S, 23:1600(5).
Mr. Estelle filed an appeal with the Orleans Parish Civil District Court. The only issue to be decided was whether La. R.S. 23:1600(5) is constitutional. On 1 October 2013, the court rendered judgment finding that the factual findings of the Board were supported by sufficient and competent evidence and that the decision was correct as a matter of law. The court also, found that La. R.S. 23:1600(5) was constitutional in that it did not deny Mr. Estelle equal protection of the laws and bore a rational relationship to a legitimate state interest, and its application was neither arbitrary nor capricious. This timely appeal followed.
Mr. Estelle accepts the factual findings of the Board of Review as correct. Thus, the only issue before the court concerns the constitutionality of La. R.S. 23:1600(5). The standard of review of a trial court’s ruling declaring the constitutionality of a statute is de novo. Louisiana Mun. Ass’n v. State, 04-0227, p. 36 (La.1/19/05), 893 So.2d 809, 842-43.
Article I, § 3 of the 1974 Louisiana Constitution, the Declaration of Right to Individual Dignity, provides:
No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. _J4No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, ex *1139 cept in the latter case as punishment for crime.
Article I, § 3 commands the courts to decline enforcement of a legislative classification of individuals in three different scenarios: (1) When the law classifies individuals by race or religious beliefs, it shall be repudiated completely; (2) When the statute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; and (3) When the law classifies individuals on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest. Sibley v. Bd. of Sup’rs of Louisiana State Univ., 477 So.2d 1094,1107 (La.1985).
The determination of a statute’s constitutionality is a purely judicial function, which is constitutionally vested in the courts. La. Const. Art. V, 1. Constitutional scrutiny favors the statute. State v. Griffin, 495 So.2d 1306, 1308 (La.1986). Statutes are presumed to be valid, and the constitutionality of a statute should be upheld whenever possible. State v. Hart, 96-0599, p. 2 (La.1/14/97), 687 So.2d 94, 95 (citing Griffin, 495 So.2d at 1308). In adjudicating a constitutional challenge, the court must analyze and interpret the language of the constitutional provision specified by the challenger. Louisiana Mun. Ass’n v. State, 00-0374, p. 5 (La.10/6/00), 773 So.2d 663, 667. Constitutional provisions are to be construed and interpreted by the same rules as are other laws. Louisiana Dep’t of Agriculture and Forestry v. Sumrall, 98-1587, p. 3 (La.3/2/99), 728 So.2d 1254,1258.
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. C.C. art. 9. When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. La. C.C. art. 12.
Under the general rules of statutory construction, courts begin their review with the premise that legislation is the solemn expression of legislative will, and, therefore, the interpretation of the law primarily involves the search for the legislature’s intent. Cole-Miers Post 3619 V.F.W. of DeRidder v. State, Department of Revenue & Taxation, Office of Alcoholic Beverage Control, 99-2215 (La.1/19/00), 765 So.2d 312, 314. However, legislative intent is not the appropriate starting point for statutory interpretation. Rather, the appropriate starting point is the language of the statute itself. In re Louisiana Health Service and Indem. Co., 98-3034, p. 10 (La.10/19/99), 749 So.2d 610, 615.
La. R.S. 23:1600 states in pertinent part:
An unemployed individual shall be eligible to receive benefits only if the administrator finds that:
* * *
(5) He has during his base period been paid wages for insured work equal to at least one and one-half times the wages paid to him in that calendar quarter in which his wages were the highest. For the purposes of this Subsection, wages shall be counted as “wages for insured work” for benefit purposes with respect to any benefit year only if such benefit year begins subsequent to the date on which the ^employing unit, by which ■ such wages were paid, became an employer within the meaning of any provision of this Chapter. [Emphasis supplied.]
*1140 Mr. Estelle argues that this provision violates the equal protection clause of our constitution.
In general, statutes are presumed to be constitutional and the party challenging the validity of the statute has the burden of proving it is unconstitutional. See Soloco, Inc. v. Dupree, 97-1256, p. 3 (La.1/21/98), 707 So.2d 12, 14; Moore v. RLCC Technologies, Inc., 95-2621, pp. 7-8 (La.2/28/96), 668 So.2d 1135, 1140; Moore v. Roemer, 567 So.2d 75, 78 (La.1990). The party challenging the constitutionality of a statute must also cite to the specific provision of the constitution which prohibits the legislative action. Id. Under some circumstances, if the party challenges a statute on equal protection grounds, the burden of proof may be shifted to the proponent of the statute to prove the constitutionality of the statute depending on the level of scrutiny to be applied. See Moore v. RLCC Technologies, Inc., 95-2621, p. 8, 668 So.2d at 1140; Sibley, supra.
“Generally, the guarantee of equal protection requires that state laws affect alike all persons and interests similarly situated.” State v. Petrovich, 396 So.2d 1318, 1322 (La.1981). The legislature has great latitude in making laws and in creating classifications under those laws, so long as those classifications can withstand constitutional muster. Id. See also Burmaster v. Gravity Drainage Dist. No. 2 of the Parish of St. Charles, 366 So.2d 1381, 1388 (La.1978).
The parties agree that the level of scrutiny in this situation is the third scenario enunciated by Sibley, supra at 1107: “when the law classifies individuals |7on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest.” Under the third level of scrutiny, the law creating the classification is presumed to be constitutional and the party challenging the constitutionality of the law has the burden of proving it unconstitutional by showing the classification does not suitably further any appropriate state interest. State v. Fleury, 01-0871, p. 7 (La.10/16/01), 799 So.2d 468, 472. See also Med Express Ambulance Service, Inc. v. Evangeline Parish Police Jury, 96-0543 (La.11/25/96), 684 So.2d 359; Manuel v. State, 95-2189 (La.3/8/96), 692 So.2d 320.
In McCormick v. Hunt, 328 So.2d 140, 142 (La.1976), the Supreme Court stated, quoting, Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970):
In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some ‘[sic] reasonable basis,’ [sic] it does not offend the Constitution simply because the classification [sic] is not made with mathematical nicety or because in practice it results in some inequality, ‘[sic] Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369.[sic] The problems of government are practical ones and may justify, if they do not require, rough accommodations-illogical, it may be, and unscientific.’[sic] Metropolis Theatre Co. v. City of Chicago, 228 U.S. 61, 69-70, 33 S.Ct. 441, 443, 57 L.Ed. 730. ‘[sic] A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.’ [sic] McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101,1105, 6 L.Ed.2d 393.
Mr. Estelle argues that the one and one-half times rule (also referred to as the “high-quarter-ratio requirement”) punishes those who have worked more and earned more in their high quarter. In other words, persons with higher income *1141 can be denied unemployment benefits for “insufficient earnings,” while others who | ^earned far less can qualify. Mr. Estelle claims that the requirement does not further any appropriate state interest and should be struck down, leaving only the monetary requirement that a worker earn at least $1,200.
The state counters that La. R.S. 23:1600(5) is rationally related to a legitimate state interest. The state maintains that the one and one-half times rule demonstrates a claimant’s commitment — commonly referred to as “attachment” — to the workforce as a basis of benefit eligibility. The state responds that if the only requirement in place was the $1,200 cut-off proposed by Mr. Estelle, workers with a higher-earning capacity would be able to work one or two days and quality for unemployment. In addition, this sole requirement could bankrupt the system. Louisiana’s unemployment system, as is true for systems in other states, is not “welfare” intended to provide benefits merely because someone is unemployed. Both the monetary and non-monetary requirements to receive unemployment are rationally related to a determination whether persons applying had a sufficient attachment to the workforce to be deemed eligible to receive benefits. A line must be drawn somewhere. Unfortunately for Mr. Estelle, he fell on the wrong side of the line.
The constitutionality of La. R.S. 28:1600(5) has never been challenged since its passage in 1983.[1] However, we find two cases on point from other jurisdictions.
|flIn Martin v. Unemployment Compensation Bd. of Review, 502 Pa. 282, 466 A.2d 107 (1983), the claimant was ineligible for unemployment benefits because her total qualifying wages were less than the amount required. She challenged the constitutionality of the Pennsylvania statute claiming that it created impermissible classifications under the Fourteenth Amendment’s Equal Protection Clause. The Pennsylvania Supreme Court stated:
In Ohio Bureau of Employment Services v. Hodory, [431 U.S. 471, 97 S.Ct. 1898, 52 L.Ed.2d 513 (1977) ] supra, the United States Supreme Court considered a constitutional challenge to a provision of the Ohio Unemployment Compensation Law which excluded from eligibility persons unemployed due to a labor dispute other than a strike. The appellant, an employee at United States Steel in Youngstown, Ohio, had been furloughed through no fault of his own because of a strike by United Mine Workers which cut off the fuel supply at the Youngstown Plant. In upholding the validity of the statute the Court concluded that while the system provides only “rough justice”, it is not irrational because it deprived an “innocent” worker of compensation. Here, as in Hodory a legislative scheme designed to achieve a legitimate public purpose should not be found unconstitutional because it falls short of perfect justice.
Id. at 305, 466 A.2d at 119 [emphasis supplied].
In an earlier case decided by the United States District Court for the District of Connecticut, a similar conclusion was reached. In Ertman v. Fusari, 442 F.Supp. 1147 (D.C.Conn.1977), the claimant brought a constitutional challenge to *1142 Connecticut’s unemployment compensation scheme wherein the statute in question required that the claimant’s earnings in his base period (high quarter) reach an amount at least equal to forty times his benefit rate for compensation. The claimant argued that the “forty rule” did not bear a rational relationship to a legitimate state interest and violated the principles of equal protection.
|10The court stated that the “forty rule,” as one feature of the legislation’s overall eligibility scheme, was designed to insure that benefits are paid only to those claimants who have demonstrated a “genuine attachment to the labor market,” and to conserve limited .public resources in the administration of the program. It also noted that Connecticut’s eligibility standard conformed to those of other states. The court stated:
It is true, as the plaintiff points out, that the “forty rule” has had a harsh impact on him due to his rather unusual pattern of work. Indeed, had he earned less in his highest quarter or had his benefit rate been reduced from $89 to $66 per week, he would have been eligible for benefits under the “forty rule.” However, it is not the function of the Court to strike down or alter the State’s unemployment compensation eligibility standards because an incidental individual inequality results from its operation; the remedy rests with the legislature. “In establishing a system of unemployment benefits the legislature is not bound to occupy the whole field. It may strike at the evil where it is most felt, ... or where it is most practicable to deal with it....” Carmichael v. Southern Coal & Coke Co., supra, 301 U.S. at 519-520, 57 S.Ct. at 877. “General rules are essential if a fund of this magnitude is to be administered with a modicum of efficiency, even though such rules inevitably produce seemingly arbitrary consequences in some individual cases.” Califano v. Jobst, 434 U.S. 47, 53, 98 S.Ct. 95, 99, 54 L.Ed.2d 228 (1977). See also Wein-berger v. Salfi, 422 U.S. 749, 781, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975).
Id. at 1151 [emphasis supplied].
It is settled law that “(a) wide range of judgment is given to the several states as to the particular type of (unemployment compensation) statute to be spread upon their books.” Steward Machine Co. v. Davis, 301 U.S. 548, 593, 57 S.Ct. 883, 81 L.Ed. 1279 (1937). Further, “[a] statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.” McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961).
| uWe note that every state in this country has minimum monetary requirements in order to receive unemployment compensation. In the 2014 “Comparison of State Unemployment Laws” compiled by the United States Department of Labor (“DOL”),[2] the DOL recognizes four different methods used by the states: (1) a multiple of high-quarter wages; (2) a multiple of weekly-benefit amount; (3) a flat qualifying amount; and (4) a week/hours of employment. Those states that use a flat qualifying amount (Alaska, Illinois, and West Virginia) have higher qualifying amount than $1,200. As noted in this case by the state, twenty-four other states use a one and one-half times or a one and one-quarter times rule. Most states have high-quarter mínimums and all the states have base period mínimums in order to qualify for unemployment benefits.
Is La. R.S. 23:1600(5) “unfair” as applied to Mr. Estelle Even assuming so, that does not render the statute unconstitutional. *1143 Quoting the Ertman court, “it is not the function of the Court to strike down or alter the State’s unemployment compensation eligibility standards because an incidental individual inequality results from its operation; the remedy rests with the legislature.” Ertman, 442 F.Supp. at 1151.
We find, as did the trial court, that La. R.S. 23:1600(5) furthers legitimate state interests; it violates neither the equal protection clause found in the Louisiana Constitution nor the equal protection clause of the Fourteenth Amendment of the United States Constitution. For these reasons, we affirm the judgment of the court below.

AFFIRMED.

. The only case cited by Mr. Estelle that even touches on the issue of this statute and benefits eligibility is Pizzolato v. A.T. and T. Technologies, Inc., 543 So.2d 601 (La.App. 4th Cir. 1989). There, it was determined that the claimant was ineligible for benefits because his base earnings fell approximately $1,000 short of the required one and one-half times rule.

. This edition reflects the status of state laws enacted as of January 1, 2014.