# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Denise Jennings, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 216 C.D. 2018 |
| | : | Submitted: August 10, 2018 |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| Respondent | : | |

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge
HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                    **FILED: September 7, 2018**

Denise Jennings (Claimant), representing herself, petitions for review from an order of the Unemployment Compensation Board of Review (Board). The Board affirmed a referee's determination that Claimant was ineligible for unemployment compensation (UC) benefits under Section 401(a) of the Unemployment Compensation Law[1] (Law) (financial eligibility criteria). Claimant argues the denial of UC benefits unfairly penalizes her for receiving a lump sum severance payment on the termination of her employment. Upon review, we affirm.

## I. Background

Claimant worked for Mondelez Global LLC (Employer). In April 2016, Employer terminated Claimant's employment because of a plant closure. Claimant received a lump sum severance payment of $118,769 from Employer.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. §801(a).

Claimant promptly filed an application for UC benefits (2016 Application). In May 2016, the Department of Labor and Industry (Department) issued a determination of eligibility establishing a benefit year from May 1, 2016 through April 29, 2017. However, the Department further determined in May 2016 that Claimant's UC benefits were subject to deductions based on her severance pay. The Department attributed and deducted Claimant's severance payment from her UC benefits in the 38 weeks from May 2016 to January 2017. Those deductions reduced her UC benefit payments to $0 until January 2017. Claimant did not appeal the 2016 determination, and it is not at issue in this appeal.

After the deductions from her UC benefits based on her severance pay were exhausted in January 2017, Claimant began receiving payments of her remaining UC benefits. Those benefits ended with her benefit year in April 2017. Although 52 weeks passed after Claimant became eligible for UC benefits, she received payments of UC benefits for only 14 of those weeks, based on the attribution and deduction of severance pay from the UC benefits otherwise payable to her.

After her benefits ended in April 2017, Claimant filed a new application for UC benefits (2017 Application). Under Section 4(a) of the Law, 43 P.S. §753(a), the filing of the 2017 Application in the second quarter of 2017 established a base year consisting of the first through fourth quarters of 2016 for determining financial eligibility.

In 2016, Claimant's wages were $42,118.72 in the first quarter. Her severance pay brought her total second quarter wages to $218,128.39. She had no wages in the third and fourth quarters. Accordingly, her total income in 2016 was $260,247.11.

Section 401(a) of the Law, 43 P.S. §801(a), requires that to be eligible for benefits, a claimant must have received not less than 37% of her total base year wages in one or more quarters other than the highest quarter of the base year. Claimant's combined income of $42,118.72 for the first, third, and fourth quarters of her base year, 2016, was less than 37% of her total base year income of $260,247.11. Consequently, the Department issued a determination of financial ineligibility under Section 401(a) of the Law.

Claimant appealed the Department's determination on the 2017 Application. After holding a hearing, a referee affirmed. Claimant then appealed to the Board, which affirmed the referee's decision. Claimant filed a timely petition for review in this Court.

## II. Issues

On appeal,[2] Claimant argues the Department improperly counted her severance pay against her twice. Initially, the amount of the severance payment was divided into weekly segments and allocated to the weeks and months following

---

[2] Our review of a Board decision of financial ineligibility is limited to a determination of whether necessary findings of fact were supported by substantial evidence, whether the Board's adjudication was in accordance with the law, and whether constitutional rights were violated. Devine v. Unemployment Comp. Bd. of Review, 101 A.3d 1235 (Pa. Cmwlth. 2014); see 2 Pa. C.S. §704.

Claimant's separation from employment. The allocated amounts were deducted from the UC benefits she would otherwise have received pursuant to the 2016 Application from May 2016 until January 2017. However, when Claimant applied for UC benefits again in April 2017, the severance payment was not divided and attributed to the weeks and months following separation, for purposes of calculating Claimant's quarterly wages under the 2017 Application during her base year of 2016. Claimant contends this was unfair because although paid in a lump sum, the severance pay was intended to be applicable to one year. Pet'r's Br. at 8, 10.

Claimant also characterizes the deduction of her severance pay from her UC benefits as delaying her eligibility for benefits. Consequently, she contends her period of eligibility should have been extended to compensate for that delay. She argues she was entitled to 26 weeks of UC benefits in connection with the 2016 Application, but only received 14 weeks of benefits. She reasons she is entitled to an additional 12 weeks of UC benefits.

In addition, Claimant asserts UC personnel gave her incorrect information on applying for UC benefits. She alleges UC representatives came to her workplace to provide UC benefits information. They advised employees to file applications for UC benefits immediately upon separation from employment. Claimant also avers she called the Department on multiple occasions in 2017 and received conflicting and incorrect information about seeking her remaining 12 weeks of UC benefits. Claimant contends this advice contributed to the Department's determination of ineligibility under the 2017 Application.

4

The Board counters that there was substantial evidence to support its factual findings. Further, the Board points out that the provisions on financial eligibility and attribution of severance pay are separate parts of the Law, and the Board must give effect to both without regard to whether they interact fairly.

## III. Discussion

It is the claimant's burden to demonstrate financial eligibility for UC benefits. Devine v. Unemployment Comp. Bd. of Review, 101 A.3d 1235 (Pa. Cmwlth. 2014). Section 4(a) of the Law, 43 P.S. §753(a), provides that UC benefits are calculated by reference to the claimant's income in her base year. The base year includes "the first four of the last five completed calendar quarters immediately preceding the first day of an individual's benefit year." Id. As explained above, to be financially eligible under Section 401(a) of the Law, 43 P.S. §801(a), a claimant must receive not less than 37% of her total base year wages in one or more quarters other than the highest quarter of her base year. See Devine.

### A. Claimant's Severance Pay

The receipt of severance pay from an employer does not render a claimant ineligible for UC benefits. Rebo v. Unemployment Comp. Bd. of Review, 499 A.2d 732 (Pa. Cmwlth. 1985). However, the amount of severance pay may affect the amount of UC benefits received by an eligible claimant. Section 404(d)(1.1) of the Law provides a mandatory calculation formula for attributing severance pay and calculating its deduction from UC benefit payments. See 43 P.S. §804(d)(1.1).

5

Here, the Department explained the Law and its application to Claimant's severance pay in its Notice of Determination dated May 18, 2016:

> Section 404(d)(1) of the [Law, 43 P.S. §804(d)(1)] provides, in part, that benefits shall be paid to each eligible employee who is unemployed with respect to such week, compensation in an amount equal to his weekly benefit rate less the total of (iii) the amount of severance pay that is attributed to the week. Section 404(d)(1.1)(i) [43 P.S. §804(d)(1.1)(i)] defines severance pay as one or more payments made to an employee on account of separation from the service of the employer, regardless of whether the employer is legally bound to make such payments.
>
> The deductible amount of severance pay attributed to the weeks immediately following the employee's separation is calculated by subtracting 40% of the average annual wage (i.e. $19,840.91) from the total amount of severance pay paid or payable to [Claimant], by [E]mployer (i.e. $118769.00). In this case, the total deductible amount of severance pay is $98928.00. The number of attributable weeks immediately following [Claimant's] separation is determined by dividing the deductible severance pay by the regular full-time weekly wage of [Claimant]. In this case $2785 is attributable [to] week(s) ending 05/07/16 through 12/31/16, and $1418 to claim week ending 01/07/17.

Certified Record (C.R.), Item #11 at 8. Based on this calculation, the Department revised Claimant's weekly benefit rate to $0 for the weeks ending May 7, 2016 through January 7, 2017. Id. As noted above, Claimant did not appeal that determination.

When Claimant sought further UC benefits in the 2017 Application, the date of filing of the new application established a new base year consisting of the four quarters of 2016. Severance pay is considered wages for purposes of UC

6

eligibility. Cugini v. Unemployment Comp. Bd. of Review, 512 A.2d 1169 (Pa. 1986). Wages are generally deemed paid on the date the employer actually pays them. 34 Pa. Code §61.3(a)(1). Therefore, Claimant's severance pay, which she received in May 2016, was part of her second quarter 2016 wages for purposes of her UC financial eligibility pursuant to the 2017 Application. As explained above, this resulted in a determination of financial ineligibility because Claimant's combined income for the first, third, and fourth quarters of 2016 was less than 37% of her total base year income.[3]

Claimant argues this outcome was unfair because her severance pay was allocated week by week to reduce her UC benefits received pursuant to the 2016 Application, but considered as a lump sum payment for purposes of determining her eligibility under the 2017 Application. However, the Law need not be perfect in its every application in order to be valid. "[I]nequities in the distribution of benefits are an unfortunate concomitant of complex economic-social welfare legislation which must ultimately reflect a balance between legislative efforts to eliminate an evil, e.g., the debilitating effects of unemployment, administrative realities and the problem of allocating scarce financial resources in a complex society." Martin v. Unemployment Comp. Bd. of Review, 466 A.2d 107, 119 (Pa. 1983); Devine, 101 A.3d at 1238-39 (quoting Martin, 466 A.2d at 119).

---

[3] The percentage of this earnings requirement has varied over time. Before the most recent amendment in 2016, a claimant had to earn at least 49.5% of her qualifying wages in the quarters outside the highest quarter of her base year. See Act of November 3, 2016, P.L. 2016-144, as amended, 43 P.S. §801(a)(2); Act of June 12, 2012, P.L. 2012-60, as amended, 43 P.S. §801(a)(2); Devine v. Unemployment Comp. Bd. of Review, 101 A.3d 1235 (Pa. Cmwlth. 2014).

In <u>Martin</u>, our Supreme Court rejected a constitutional challenge to the financial eligibility requirements as they then existed. Noting that the legislature needed only a rational basis for its eligibility requirements, the Court concluded the statutory scheme "was designed to and does serve a legitimate state end even though it does result in some inequality." <u>Id.</u> at 111. The Court additionally observed that many states impose similar requirements for UC financial eligibility:

> Various methods have been adopted in the numerous jurisdictions which require claimants to earn a percentage of qualifying wages outside their highest quarter as an alternative measure for actual time worked because of the difficulty in obtaining accurate statistics for the latter. All such methods are only rough measures of time actually worked, since the amount of a claimant's earnings in any period is a function of both time and rate of compensation. They have, nevertheless, survived constitutional challenge. <u>Ertman v. Fusari</u>, 442 F.Supp. 1147 (D.C.Conn.1977). Thus, the rational relationship between the requirement that a claimant earn a percentage of income outside the highest quarter to a legitimate government interest is not disputed.

<u>Id.</u> at 114-15.

Here, Claimant's fairness argument is essentially an equal protection challenge. The Court's analysis in <u>Martin</u> makes clear that such an argument cannot prevail.

Claimant further contends Employer meant the severance payment to be for one year and it should be deemed to have been received in increments throughout that year. This argument lacks merit. As noted above, the general rule is that wage payments are deemed received when paid. 34 Pa. Code §61.3(a)(1).

8

An exception to this rule may arise where a payment is not made in accordance with the employer's normal practice. Cugini. However, a claimant asserting such an exception bears the burden of proof on that issue. Id. Here, Claimant has not alleged, much less proven, that Employer's payment of severance in a lump sum differed from its normal practice. Nothing in the certified record suggests Employer normally made severance payments over the course of a year rather than in a lump sum. Therefore, Claimant did not show any exception to the general rule of 34 Pa. Code §61.3(a)(1). See Alla v. Unemployment Comp. Bd. of Review, 119 A.3d 434 (Pa. Cmwlth. 2015).

Claimant's argument also reflects a fundamental misreading of the Law and the Department's May 18, 2016 determination. She evidently believes she did not start receiving UC benefit payments until January 2017 because her severance pay delayed the starting point of her UC eligibility, and thus, the running of her benefit year. That was not the case.

Severance pay allocations and resulting deductions from UC benefit payments come into play only after a claimant is found eligible for UC benefits. 43 P.S. §804(d)(1) ("each eligible employee" shall receive UC benefit payments in the amount of her weekly benefit rate, less "the amount of severance pay that is attributed to the week") (emphasis added); Rebo v. Unemployment Comp. Bd. of Review, 499 A.2d 732, 735 (Pa. Cmwlth. 1985) ("Section 404(d) relates to deductions from compensation and pertains to employees who have already been determined to be eligible under Section 404(a)."). Severance pay deductions do not suspend, delay, or extend the period of eligibility; they simply reduce the dollar

amount of each UC benefit payment to which they are allocated.  See 43 P.S. §804(d)(1).  In other words, severance pay allocations reduce the overall amount of a claimant's UC benefits, but have no effect on the time period of eligibility for UC benefits.  They do not extend the claimant's benefit year.

Contrary to Claimant's suggestion, the record does not indicate she was found ineligible for UC benefits from May 2016 until January 2017.  See C.R., Item #11 at 8, 9.  Rather, she became eligible upon her separation from employment for 26 weeks of UC benefits, subject to deductions from her benefits based on her severance pay.  Id. at 8.  Claimant received payments of UC benefits for only 14 weeks because only 14 weeks of eligibility remained in her benefit year after deduction of the allocated portions of her severance payment from her UC benefit payments as set forth in the Department's determination on the 2016 Application.

### B. Alleged Misinformation from UC Representatives

Claimant also contends UC representatives gave her incorrect information in two ways.  First, she asserts two UC representatives came to her worksite to provide information and advice to the employees before Employer closed the plant.  Claimant argues she relied on their instruction to apply for UC benefits immediately despite receiving severance pay.  Second, she contends she telephoned the Department repeatedly concerning the cessation of UC benefits.  Claimant complains she received conflicting information from various Department personnel concerning whether she should file the 2017 Application in April 2017 or seek further UC benefits by attempting to extend her benefit year under the 2016 Application.

10

Claimant's argument concerning the allegedly incorrect information is not well developed. However, she appears to suggest her ineligibility for further UC benefits resulted from the course of conduct she followed in relation to the 2016 and 2017 Applications based on incorrect information provided by UC representatives. We discern no merit in this argument.

Regarding Claimant's assertion that UC representatives met with employees at her workplace, Claimant offered no evidence to support her averment that they were in fact UC representatives. To the contrary, when questioned by the referee concerning that issue, Claimant conceded she just <u>assumed</u> the people who came to her workplace were from the Department. Referee's Hr'g, Notes of Testimony, 8/8/17, at 7.

Claimant also contends the alleged UC representatives stated that although employees would not initially receive UC benefits because of their severance pay, they would receive UC payments for 26 weeks once the payments started. That alleged statement was inaccurate as applied to Claimant. As explained above, the attribution of Claimant's severance pay left only 14 weeks of eligibility remaining in her benefit year.

However, the Department's determination mailed to Claimant on May 8, 2016 clearly stated that her benefit year would run from May 1, 2016 through April 29, 2017. C.R., Item #11 at 9. The Department's determination mailed to Claimant on May 18, 2016 stated her severance deductions would reduce her benefits to $0 until January 7, 2017. <u>Id.</u> at 8. Claimant could readily discern from

11

this determination that by the time her severance deductions ended, there would be only 14 weeks, not 26, remaining in her benefit year.[4]

Finally, Claimant contends she received conflicting information in 2017 concerning whether she should seek further UC benefits under the 2016 Application after the end of her benefit year, or whether she should file a new application. In its decision, the Board found that any attempt to change Claimant's benefit year under the 2016 Application would have been untimely.[5] Bd. Op., 12/26/17 at 2. On appeal, Claimant does not challenge that finding. Thus, the conflicting information from the Department, if any, could not have affected Claimant's eligibility for further UC benefits. Her request to alter her benefit year would have been due in late January 2017. Thus, she was already ineligible before she began her alleged inquiries.

In short, Claimant fails to demonstrate that she received any incorrect information from the Department, or that she acted on any such information in a way that reduced the UC benefits she received.

---

[4] Both Department determinations concerning the 2016 Application included appeal instructions and notices of the applicable appeal deadlines. Certified Record, Item #11 at 8, 9. As noted above, Claimant never appealed either determination.

[5] Under 34 Pa. Code §65.56(a)(1)(i), a claimant must file any request to withdraw a UC benefit application and cancel the corresponding benefit year no later than 15 days after the Department issues the claimant's first payment of UC benefits.

## IV. Conclusion

Based on the foregoing, we affirm the decision of the Board.

_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Denise Jennings,      :
     Petitioner  :
           :
   v.       :  No. 216 C.D. 2018
           :
Unemployment Compensation  :
Board of Review,     :
     Respondent :

## **O R D E R**

  **AND NOW**, this 7th day of September, 2018, the order of the Unemployment Compensation Board of Review is **AFFIRMED**.


            _____
            ROBERT SIMPSON, Judge